[No. 249. Decided October 11, 1892.]

JEANIE McHUGH BROWN, *Respondent*, v. THE CITY OF SEATTLE AND E. T. SMART, *Appellants*.

MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — CHANGE OF GRADE — DAMAGES — EFFECT OF DEDICATION — INJUNCTION.

Under the constitutional provision ( art. 1, § 16) that no private property shall be taken or damaged for public or private use without just compensation having first been made, damages are recoverable by the owner of land abutting upon a street for any permanent injury inflicted upon such abutting land by any material change of grade or obstruction to the .abutter's access, where the damages thus inflicted exceed the benefits derived from the grading or other improvement. ( HOYT, J., dissents.)

The dedication of a street to public use does not authorize a municipal corporation to raise or lower the surface of the street to any extent it may deem proper without subjecting itself to damages for the injury thereby occasioned to the abutting owner. ( HOYT, J., dissents.)

Where the proposed grading of a street will seriously reduce both the rental and selling value of an abutting owner's property, the grading may be enjoined unless the damage has been ascertained and compensation made before the work is done. ( HOYT, J., dissents.)

*Appeal from Superior Court, King County.*

*S. H. Piles*, and *Charles F. Munday*, for appellants.

*Thomas R. Shepard (Burke, Shepard & Woods*, of counsel ), for respondent.

The opinion of the court was delivered by

STILES, J. — This was an action to enjoin the city of Seattle from grading down that part of Jefferson street, in that city, lying between Eighth street and the alley between and parallel with Seventh and Eighth streets, until just compensation to the plaintiff for the injury to result from such grading to her abutting real property should have

| | |
|---|---|
| 5 | 35 |
| 5 | 745 |
| 31* | 313 |
| 32* | 214 |
| 32* | 795 |
| 5 | 35 |
| 26 | 289 |
| 5 | 35 |
| 27 | 125 |
| 27 | 526 |
| 5 | 35 |
| 30 | 690 |
| 5 | 35 |
| e35 | 76 |
| 5 | 35 |
| 36 | 121 |
| 5 | 35 |
| e38 | 522 |
| 5 | 35 |
| e39 | 358 |
| 5 | 35 |
| e41 | 493 |
| 41 | 497 |
| 5 | 35 |
| f42 | 115 |

been first ascertained and made or paid into court for her benefit. E. T. Smart, with whom the city had made a contract to do the grading in question, was joined as a defendant. The court below, after trial, found in respondent's favor, and granted the injunction sought.

The respondent's property consists of three lots, each 60 by 120 feet in size, Nos. 2, 3, 4, block 59, Terry's first addition to Seattle. Lots 2 and 3 fronted on Eighth street, and lot 2 fronts on Jefferson street. Lot 4 fronts on Seventh street, sixty feet from Jefferson. Each of the lots has the alley in its rear. The streets named are each sixty-six feet in width, and the alley is sixteen feet in width. In 1869 the plat of the addition was filed for record, and the streets and alleys were thereby dedicated to the public use. The respondent derives title to her lots from the maker of the plat, from whom she bought them in 1874, while they were unimproved, with the exception that there was a small house on lot 4. In 1883 the city, by ordinance No. 443, established the grade elevation of Jefferson street at heights above the city *datum* line as follows: At the intersection with Sixth street, 175½ feet; at Seventh street, 261 feet; at Eighth street, 304 feet. For the cross streets the ordinance required that there should be a uniform and continuous rate of grade between each two adjacent street intersections: *Provided*, That no grade line was established between Sixth and Seventh streets. In 1887 the grade line at Seventh street was changed to 265 feet. In 1888 and 1889 respondent erected, on her lots 2 and 3, three cottages fronting on Eighth street, to which there is access from Eighth street at their front, and from Jefferson street, by way of the alley, at their rear. She also erected a double house fronting on Jefferson street, between Eighth street and the alley, its front standing within six feet of Jefferson street, and its west side within four feet of the alley; and also a house facing

on the alley, occupying a part of the rear end of lot 3. For these houses she had been receiving a total rental of $237 per month. Seventh street was graded down in 1887–8, so that the access to the house located on lot 4 is by an ascent of thirty-two steps. The alley has heretofore been used as the most convenient means of access to all the property for delivering heavy supplies.

On April 14, 1890, the common council, acting under § 8 of the city charter of 1886 (Laws 1885–6, p. 241), without petition from property owners, ordered that Jefferson street be graded from Third · street to Broadway (which is beyond Eighth street), by unanimous vote. The natural level of Jefferson street at Seventh street is $267\frac{6}{10}$ feet; at the alley, $292\frac{6}{10}$ feet; and at Eighth street, $312\frac{38}{100}$ feet. The grade proposed would leave a street with an ascending grade from Seventh to Eighth street of about $15\frac{25}{100}$ per cent., which is not greatly different from the general ascent of the natural surface; but, owing to the elevations at which Seventh and Eighth streets have been fixed, it will become necessary, in order to make the new grade continuous and uniform between the two streets, to excavate the width of the street to a depth which at Eighth street would be, according to the established grade, $8\frac{38}{100}$ feet, and at the alley something like seventeen feet. This arrangement would, of course, leave the respondent's lots just that much above the street when the improvement is completed, and the alley would be no longer available for any of its natural purposes until further improvements had been made upon it. The city, however, claims that under its modified proposition the cut at Eighth street will be reduced to $2\frac{38}{100}$ feet, and at the alley to something over fourteen feet. Terrace street, on the opposite side of the block from Jefferson street, had already been graded down, so that the alley at that end terminated in a drop of five or six feet. From Third street to Seventh street the

change in elevation is just 200 feet, being within a fraction
of 20 per cent. A large proportion of this elevation, how-
ever, occurs between Sixth and Seventh streets, where the
difference in elevation is $85\frac{5}{10}$ feet, or more than 33 per
cent. It is conceded that this fact makes it impracticable
to use Jefferson street between Sixth and Seventh for any
ordinary street purposes excepting foot passage. It is also
conceded that between Seventh and Eighth streets Jeffer-
son street was impassable in its natural condition for teams,
excepting a portion of the distance westward from Eighth
street. It also appears that the proposed grade between
Seventh and Eighth streets will be no steeper than that of
several other streets which are traveled by teams in the
city of Seattle.

Evidence was taken by both parties upon the question
whether or not the plaintiff's property would be injured
by the proposed cutting down of the street. The result of
that evidence, we think, shows a preponderance that she
will be injured beyond any benefits which she will receive
by the grading of the street, and that her property will be
less valuable when the grade is completed than when it is
begun. But the main question is, admitting the fact of
injury, would the respondent be entitled to compensation
from the city? Previous to the adoption of the constitu-
tion she would have been without remedy, excepting for
such injury as might have occurred to her land alone, aris-
ing from the withdrawal of support and its consequent
actual falling in, or from the negligence of the city in doing
the work. *Parke v. Seattle, ante,* p. 1; *Gilmore v. Dris-
coll,* 122 Mass. 199; *Smith v. Corporation of Washington,*
20 How. 135. But the constitution of this state (art. 1,
§ 16) provides that no private property shall be taken or
damaged for public or private use without just compensa-
tion having been first made or paid into court for the owner,
and it is upon this prohibition that the respondent bases her

right to an injunction.   The earlier constitutions of the
several states in the union contained, with but few excep-
tions, a provision that private property should not be taken
for public use without just compensation.   The constitu-
tion of the United States contains substantially the same
provision, which was applicable to the territory.   Under
these provisions, however, owing to the interpretation put
upon the word "taken" by the courts of the several states,
with the exception of the courts of Ohio, great and mani-
fest injury was constantly done by the states, counties and
cities to the private citizen without any legal means of re-
imbursement.   The theory was that wherever the state,
through its legislative acts, authorized any of its agents to
make public improvements, so long as these agents carried
on their work within the scope of their authority, and
without negligence, they were liable to no one, whatever
damages might accrue.   A citizen was thus left without
protection in all that large class of cases where, through
some act done for the public benefit, or for a use public or
*quasi* public, although no part of his tangible property was
physically taken, the use or value of his property was pal-
pably impaired, or was stripped of incidents comprised
within the conception of complete property rights which
brought to those rights quite as much value as the mere
possession of the property.

In 1870 the State of Illinois, in revising its constitution,
inserted therein the provisions which we have quoted from
our own.   Its action in that matter has since been followed
by West Virginia, Alabama, Missouri, Nebraska, Arkansas,
Texas, Georgia, California, Colorado, Kentucky, Montana,
and the Dakotas.   Some of the constitutions mentioned
differ slightly from our own in their phraseology, but their
substance is exactly the same, with the exception that in a
few cases the damage is not required to be first paid.   Un-
der these constitutional provisions many such cases have

arisen, and the courts have been uniform in their holdings that damages are now recoverable by the owners of land abutting upon streets and highways, for any permanent injury inflicted upon such abutting lands, by any material change of grade or obstruction to the abutter's access, where the damages thus inflicted exceed the benefits derived from the grading or other improvement. Out of the dozens of cases which might be cited, we cite the following: *City of Pekin v. Brereton*, 67 Ill. 477; *City of Elgin v. Eaton*, 83 Ill. 535; *Rigney v. City of Chicago*, 102 Ill. 64; *Borough of New Brighton v. United Presbyterian Church*, 96 Pa. St. 331; *Householder v. City of Kansas*, 83 Mo. 488; *City of Atlanta v. Green*, 67 Ga. 386; *Reardon v. San Francisco*, 66 Cal. 492 (6 Pac. Rep. 317); *City Council of Montgomery v. Townsend*, 80 Ala. 489 (2 South. Rep. 155) and 84 Ala. 478 (4 South. Rep. 780); *City Council of Montgomery v. Maddox*, 89 Ala. 181 (7 South. Rep. 433); *McElroy v. Kansas City*, 21 Fed. Rep. 257; *Harmon v. Omaha*, 17 Neb. 548 (23 N. W. Rep. 503); *Hammond v. City of Harvard*, 31 Neb. 635 (48 N. W. Rep. 462).

Question was made in all these cases, as it has been made in this one, whether the addition of the word "damaged" should be taken to mean anything further than was formerly covered by the word "taken," but it is manifest that no such construction could be sustained. "Damaged" does not mean the same thing as "taken," in ordinary phraseology. The makers of the Illinois constitution used the word in that instrument for some purpose. Other states changed their constitutions for substantially the same purpose. They took the new phrase subject to the general rule of construction, that the adoption of constitutional or statutory language by one state from another adopts to some extent, at least, the construction put upon the borrowed language by the courts of the state from which it

came.   After almost twenty years of discussion and deci-
sion in Illinois and other states, we put the words "taken
or damaged" into our constitution, and they must have
their effect.   In *Chicago v. Taylor*, 125 U. S. 161 ( 8 Sup.
Ct. Rep. 820), the court said:

"The use of the word 'damaged' in the clause providing
for compensation to owners of private property appropri-
ated to public use, could have been with no other intention
than that expressed by the state court.   Such a change in
the organic law of the state was not meaningless.   But it
would be meaningless if it should be adjudged that the
constitution of 1870 gave no additional or greater security
to private property sought to be appropriated to public use
than was guaranteed by the former constitution."

It is now too late to urge this argument against the re-
covery of such damages as are threatened to be caused by the
action of the city of Seattle here in question.   Every court
in which the point has been raised has decided in favor of
the private citizen; but, were it now presented to us for the
first time in the history of the phrase, we should not be dis-
posed to view it in any way different from that expressed
in the cases we have cited.   If private property is damaged
for the public benefit, the public should make good the loss
to the individual.   Such always was the equity of the case,
and the constitution makes the hitherto disregarded equity
now the law of it.

In the matter of street grades, however, counsel for the
city urge that a dedication should carry with it the right
to raise or lower the surface of a street to any extent
deemed proper by the municipal authorities, and that to
subject the cities to the constitutional rule of damage
would hinder, delay and prevent street improvements, and
cause heavy burdens for this class of expenses to be laid
upon the public.   It is said that when the owner of land
lays it off into lots, blocks, streets and alleys, he, by his
act of dedication of the public places, consents that they

may be used in any way consistent with the purpose of the dedication, as the owner of two adjacent lots who sells one of them consents that his grantee may use his purchase as he sees fit from the center of the earth to the sky. But, in order to sustain the appellant's claim, it would be necessary to overlook the fact that a street is laid out for the benefit of abutting lots as well as for public passage, the land in the lots retaining the easement of access over the land in the street, and this easement being the principal motive and consideration for the dedication. The only obligation which a city assumes by its acceptance of a street is to maintain thereon a reasonable roadway, according to the circumstances. It cannot be compelled to fill up chasms or dig down hills to make the most perfect way for travel of every kind. Its duty is done when, under all the circumstances, it has made provision for travel of the kind suited to the locality. It cannot be compelled to grade, or otherwise improve, a street, and it loses none of its rights by nonuser. For the construction of whatever improvements it does make, it is now quite the custom to assess the entire cost to the abutting land. A harsh application of the old rule would put the dedicator in the position of consenting to all that the municipality might arbitrarily do, even to the destruction of values in his abutting land. But, in fact, the contemplation of no such unreasonable thing as a grade which would actually reduce the value of his abutting land can be imputed to him, since it is not in the nature of men to do things which are patently contrary to their self-interests. On the other hand, to enable the city to perform its duty, it must derive from the dedication the right to build a reasonable roadway according to the peculiarities of the locality, and having due regard to the convenience of the abutting property, and that of the public, as well as to its own liability for the flowage of surface water, and the like. Such a street may

be said to be fairly contemplated by every dedicator.   To go beyond the strict requirements of this case, and perhaps to invite the charge of promulgating mere *dicta*, a dedication should always be taken as a consent that the natural surface of the street at its center line might be the grade to which the roadway should be leveled from either side, since a reasonable roadway could not be made across a slope of much pitch.   Along its middle course the street ought to follow the general contour of the land, without slavish adherence to every inequality, the disregard of which can injure no one or make property less valuable. If no street practicable for the public use can be made without making cuts or fills which will damage abutting land so as to reduce its value below that which it possessed before the street was begun, none should be undertaken at all unless abutting owners waive damages, or until public necessity shall justify paying the cost of a lower or higher grade.

Under the circumstances of this case, we think the court was justified in interposing its injunction, as by the proofs a strong probability, amounting almost to a certainty, was established that the grading of Jefferson street as proposed would seriously reduce both the rental and selling value of respondent's property.   A cut of from fourteen to seventeen feet at the alley would have greatly affected her access to her double house, and would have practically destroyed the use of the alley in connection with all her property.   Under the constitution she had a right to have this damage ascertained by a jury and paid to her before the work was done, if the damage thus sustained would leave her property less valuable to sell or rent than it was before; the jury being the judges of the reasonableness of the grade under the dedication, and of the fact and extent of the injury.

Objection is made by counsel to the allowance of the in-

junction, because it is said that the respondent should be
left to her action for damages, as it could not be considered
that it was intended by the constitution that the cities and
towns of the state could be stopped in the progress of the
work of improving streets by frequent injunctions on the
part of property owners.   A case has been brought to
our notice which is exactly in point in its ruling, viz.:
*Moore v. City of Atlanta*, 70 Ga. 611.   The constitution of
Georgia provides that private property shall not be taken
or damaged without just and equitable compensation being
first paid.   The city of Atlanta was proceeding to grade a
street in front of Moore's property, and he applied for an
injunction to restrain the prosecution of the work until his
damages should be assessed and paid.   The writ was re-
fused, and on appeal the supreme court affirmed the judg-
ment.   The decision of this case, as the reading of the
opinion shows, was based upon the argument that it was
better that one man should be left to recover his damage
by ordinary suit at law than the city authorities be hin-
dered in grading a street; or, in other words, the damage
to one man was balanced against the possible inconvenience
of many, which is not a recognized basis of legal decision.
The embarrassments of the constitutional provisions were
pointed out, but it seems to us the plain letter of that in-
strument was disregarded.   Justification for the decision
was sought in the case of *Stetson v. Chicago, etc., R. R.
Co.*, 75 Ill. 74, but the fact seems to have been entirely
overlooked that the constitution of Illinois does not require
that compensation be first made in any such case.   We
can foresee many difficulties, and perhaps much litigation,
likely to ensue from the faithful enforcement of our con-
stitutional requirement that damages be first paid; but we
have no choice in the matter, and these difficulties, as well
as many others, must be met and dealt with as they arise.
It will not be every case in which the property owner

deems himself likely to be injured that will justify an injunction, and the courts of the state will undoubtedly do their duty in this particular and grant no preliminary restraining order or injunction until it is made to appear, with legal probability or certainty, that damages will be incurred by the grading of streets.

ANDERS, C. J., and DUNBAR, J., concur.

SCOTT, J., dissents.

HOYT, J. (*dissenting*). — I think the judgment of the court below should be reversed.   When those under whom the plaintiff claims dedicated the street to public use, it is conceded that they, in substance, said: "Take this street, and use it."   I think it equally clear that they, in effect, further said: "Improve this street so as to adapt it for use as such."   Such adaptation would, of course, include such change in the surface thereof as was necessary to best adapt it to the purposes for which it was designed.   If such was the effect of the dedication, it seems clear that the dedicators could not claim damages against the public for doing that which they had said it should do, and as the plaintiff could get no better right than those under whom she holds, it follows that for the injuries set out in the complaint there could be no recovery.   In the case of *Parke v. Seattle, ante*, p. 1, I have at some length given my reasons for holding that for such injuries no action will lie. I shall not repeat them here.

Something is said in the opinion of the majority of the court as to the proper construction of that provision in our constitution which provides that no property shall be taken or damaged for public use without compensation.   I am unable to agree with what is thus said, and if, in my opinion, a construction of such clause was necessary to the decision of this case, I should feel it my duty at some length to express my dissent from the views thus expressed, but under

my view of the effect of the dedication, as above stated, the decision of the case does not call for such construction; hence I shall not now discuss it.