[No. 5811.  Decided January 29, 1906.]

# S. C. FARNANDIS et al., Respondents, v. GREAT NORTHERN RAILWAY COMPANY et al., Appellants.[1]

ADJOINING LANDOWNERS—LATERAL SUPPORT—BLASTING—INJURY TO BUILDINGS — TUNNELING ADJACENT LAND — RECOVERY IRRESPECTIVE OF NEGLIGENCE. In an action for damages to buildings by the sinking and subsidence of the earth, caused by the construction of a railway tunnel in a city under lands adjacent to the plaintiff's buildings, recovery may be had without proof of negligence on the part of the railroad company in constructing the tunnel, when the damage was caused by the removal of the lateral support or the shaking of the earth by blasts and not by any increased downward or lateral pressure upon the soil by the buildings, in view of the constitutional provision that private property shall not be damaged without just compensation having been first made.

SAME—EVIDENCE—QUESTION FOR JURY. In an action for damages to buildings, the question whether the injury was caused by blasts and the removal of lateral support by the construction of a tunnel one hundred and twenty feet distant, is for the jury when the sinking and cracking of the earth was evidently not due to any increased or downward pressure upon the soil by the buildings.

SAME—MEASURE OF DAMAGES—LANDLORD AND TENANT—RESPONSIBILITY TO TENANT FOR REPAIRS. In an action by the lessees of buildings used for hotel and lodging purposes for damages by the removal of lateral support making the buildings unfit for occupancy, it is proper to instruct the jury to consider in determining the damages the uses to which the buildings were put.

SAME — REMOVAL OF LATERAL SUPPORT — TAPPING SUBTERRANEAN WATERS—DAMAGES FROM OPERATIONS IN PUBLIC STREETS. In an action for damages to premises by the removal of lateral support, it is no defense that the subsidence of the land was due to an excavation under a public street which tapped subterranean waters the withdrawal of which caused the subsidence of the land, the same rule applying as in the case of the damaging of property by the removal of earth in a public street.

SAME—MEASURE OF DAMAGES—USE OF BUILDINGS. In an action by the lessees of buildings, by them sublet to other tenants, for damages to the buildings by reason of the removal of lateral support, the measure of damages does not include any sum for the responsi-

[1]Reported in 84 Pac. 18.

bility of the plaintiffs to their tenants for want of repair, since the plaintiffs would not be liable to the subtenants without negligence or fault on their part.

TRIAL—ERRONEOUS STATEMENT OF LAW BY COUNSEL—CORRECTION. Where counsel argue the law to the jury incorrectly stating the same on material points, it is the duty of the court, upon a proper request, to correct the error by proper instructions.

Appeal from a judgment of the superior court for King county, Tallman, J., entered March 14, 1905, upon the verdict of a jury rendered in favor of the plaintiffs, in an action against railroad companies for damage to buildings caused by the construction of a tunnel. Reversed.

*L. C. Gilman,* for appellants, contended, among other things, that the abutting owner has, as against a city, no right to the lateral support of the soil of the street, and can acquire none from prescription or lapse of time. 2 Dillon, Municipal Corporations, § 991; *Quincy v. Jones,* 76 Ill. 231, 20 Am. Rep. 243; *Mitchell v. Mayor of Rome,* 49 Ga. 19, 15 Am. Rep. 669; *Mayor of Rome v. Omberg,* 28 Ga. 46, 73 Am. Dec. 748; *Radcliff's Ex'rs v. Mayor etc. of Brooklyn,* 4 N. Y. 195, 53 Am. Dec. 357; *Fellowes v. New Haven,* 44 Conn. 240, 26 Am. Rep. 447; *Delphi v. Evans,* 36 Ind. 90, 10 Am. Rep. 12; *Meares v. Com'rs of Wilmington,* 31 N. C. 73, 49 Am. Dec. 412; *Callender v. Marsh,* 1 Pick. 418; *Northern Transp. Co. v. Chicago,* 99 U. S. 635, 25 L. Ed. 336. Within the meaning of the provision of the constitution respecting damage to property, injury to buildings resulting from the removal of lateral support is *damnum absque injuria. Rigney v. Chicago,* 102 Ill. 64; *East St. Louis v. O'Flynn,* 119 Ill. 200, 10 N. E. 395, 59 Am. Rep. 795; *Metropolitan etc. R. Co. v. Goll,* 100 Ill. App. 323; *Davenport etc. R. Co. v. Sinnet,* 111 Ill. App. 75; *Pennsylvania R. Co. v. Lippincott,* 116 Pa. St. 472, 9 Atl. 871, 2 Am. St. 618; *Pennsylvania R. Co. v. Marchant,* 119 Pa. St. 541, 13 Atl. 690, 4 Am. St. 659; *Austin v. Augusta etc. R. Co.,* 108 Ga. 671, 34 S. E. 852; *Peel v. Atlanta,* 85 Ga. 138,

11 S. E. 582; *Van De Vere v. Kansas City,* 107 Mo. 83,
17 S. W. 695, 28 Am. St. 396; *Gaus & Sons Mfg. Co. v.
St. Louis etc. R. Co.,* 113 Mo. 308, 20 S. W. 658, 35 Am.
St. 706; *Rude v. St. Louis,* 93 Mo. 408, 6 S. W. 257; *Ruckert
v. Grand Ave. R. Co.,* 163 Mo. 260, 63 S. W. 814; *Gilbert
v. Greeley etc. R. Co.,* 13 Colo. 501, 22 Pac. 814; *Jordan v.
Benwood,* 42 W. Va. 312, 26 S. E. 266, 57 Am. St. 859;
*Adams v. Chicago etc. R. Co.,* 39 Minn. 286, 39 N. W. 629,
12 Am. St. 644; *Carroll v. Wisconsin etc. R. Co.,* 40 Minn.
168, 41 N. W. 661; *Hanlin v. Chicago etc. R. Co.,* 61 Wis.
515, 21 N. W. 623; *Rinard v. Burlington etc. R. Co.,* 66
Iowa 440, 23 N. W. 914; *Morgan v. Des Moines etc. R.
Co.,* 64 Iowa, 589, 21 N. W. 96, 52 Am. Rep. 462. There
can be no recovery for damage resulting from the tapping of
an underground stream by excavations in a city street. El-
liott, Roads and Streets (2d ed.), §§ 17, 407; *Elster v.
Springfield,* 49 Ohio St. 82, 30 N. E. 274; *Morrison v.
Bucksport etc. R. Co.,* 67 Maine 353. See, also, *Regina v.
Metropolitan Board of Works,* 3 B. & S. 710, 32 L. J. Q.
B. N. S. 105, L. R. 4 Q. B. 358. The landowner may make
use of his property, and place improvements thereon, without
regard to the effect upon subterranean waters. *Meyer v.
Tacoma Light etc. Co.,* 8 Wash. 144, 35 Pac. 601; *Greenleaf
v. Francis,* 18 Pick. 117; *Wheatley v. Baugh,* 25 Pa. St.
528, 64 Am. Dec. 721; *Haldeman v. Bruckart,* 45 Pa. St.
514, 84 Am. Dec. 511; *Bliss v. Greeley,* 45 N. Y. 671, 6
Am. Rep. 157; *Bloodgood v. Ayers,* 108 N. Y. 400, 15
N. E. 433, 2 Am. St. 443; *Chatfield v. Wilson,* 28 Vt. 49;
*Roath v. Driscoll,* 20 Conn. 532; *Swett v. Cutts,* 50 N. H.
439, 9 Am. Rep. 276; *Buffum v. Harris,* 5 R. I. 243; *Hougan
v. Milwaukee etc. R. Co.,* 35 Iowa 558, 14 Am. Rep. 502;
*Herriman Irr. Co. v. Keel,* 25 Utah 96, 69 Pac. 719; *South-
ern Pacific R. Co. v. Dufour,* 95 Cal. 615, 30 Pac. 783;
*Mosier v. Caldwell,* 7 Nev. 363; *Popplewell v. Hodkinson,*
L. R. 4 Exch. 248; *Galgay v. Railway Co.,* 4 Ir. Cl. Rep.
456; *Acton v. Blundell,* 12 M. & W. 324; *New River Co.*

*v. Johnson,* 2 E. & E. Q. B. 435; *Smith v. Kendrick,* 7 C. B. 515, *Queen v. Metropolitan Board of Works,* 3 Best & Smith 708; *Chasemore v. Richards,* 7 H. L. Cases 349, 29 L. R. Ex. 81. When, for the purpose of lawfully making use of or improving land, it becomes necessary to resort to blasting as the only practicable method of doing so, the owner will not be liable for consequential damages to neighboring property unless he has failed to exercise due care in the performance of the work. 12 Am. & Eng. Ency. Law (2d ed.), 509; *Benner v. Atlantic Dredging Co.,* 134 N. Y. 156, 31 N. E. 328, 30 Am. St. 649; *Booth v. Rome etc. R. Co.,* 140 N. Y. 267, 35 N. E. 592, 37 Am. St. 552; *Murphy v. Lowell,* 128 Mass. 396, 35 Am. Rep. 381; *Simon v. Henry,* 62 N. J. L. 486, 41 Atl. 692. A landlord is not responsible to his tenant for the act of a third party causing the tenant injury, so that if the injuries to these buildings were caused by any act of these defendants, the plaintiffs would not be liable to their tenants therefor. 18 Am. & Eng. Ency. Law (2d ed.), 625, 626, and cases cited; Taylor, Landlord & Tenant (7th ed.), §§ 304, 305; *Surget v. Arighi,* 11 S. & M. (Miss.) 87, 49 Am. Dec. 46; *Branger v. Manciet,* 30 Cal. 625; *Schilling v. Holmes,* 23 Cal. 227; *Kimball v. Grand Lodge,* 131 Mass. 59; *Schuylkill etc. R. Co. v. Schmoele,* 57 Pa. St. 271; *Moore v. Weber,* 71 Pa. St. 429, 10 Am. Rep. 708; *Barnes v. Wilson,* 116 Pa. St. 303, 9 Atl. 437.

*McCafferty & Bell, A. Jurich,* and *Allen, Allen & Stratton,* for respondents.

MOUNT, C. J.—The respondents are the owners of a ground lease of lot 2 in block 6 of Denny's Fourth addition to Seattle. They have erected and own two brick buildings thereon, which buildings are leased and used for lodging and hotel purposes. One of these buildings is known as the "Lotus" building, and the other as the "Pleasanton" building. The respondents Farnandis and wife and Hamm own the whole of the Pleasanton building and an undivided one-half of the

Lotus building. The respondents Morris and wife own an undivided half of the Lotus building. In the years 1903 and 1904, the appellant railway companies constructed a tunnel underneath said city of Seattle, for use for railway purposes. This tunnel is about one mile in length and of varying depth from the surface. It was constructed in part under property belonging to the said railway companies, in part under private property through which an easement had been acquired, and in part under streets and alleys of the city, a franchise having been granted by the city permitting the same to be done. The tunnel in its course passes within about one hundred and twenty feet of lot 2 whereon respondents' buildings are situated.

The following is a sketch showing the relation of respondents' property to the tunnel; also showing the position of the tunnel in this vicinity constructed under a public street, the portion under the property of the railway companies, and the portion under property through which said companies have an easement.

The surface of the ground on which respondents' buildings stand is some higher than the surface over the tunnel, the land between the building and the tunnel being a sidehill. Respondents' buildings had been constructed for about two years prior to the time the tunnel was constructed, and were in a solid and substantial condition until the time of the construction of the tunnel.   When the tunnel was being constructed in the immediate vicinity of the buildings, it became necessary to use large charges of dynamite and giant powder to blast out the rock and gravel deposits in the tunnel.   These blasts caused the buildings to shake so that occupants would not remain therein.   Large cracks also opened up in the earth between the tunnel and the buildings, and caused the buildings to crack.   A settling of the earth caused a partial collapse of the buildings and much damage thereto.

Separate actions were instituted by respondents against appellants.   Respondents Farnandis and wife and Hamm alleged in their complaint that the construction of the tunnel through and under the property adjacent to the said buildings caused the earth to sink, settle, and subside, and thus occasioned the settlement and partial collapse of the buildings.   They allege damages in the sum of $20,000.   The respondents Morris and wife alleged in their complaint that, by reason of the manner of construction of the tunnel, the lot was caused to settle and sink and the buildings caused to partially collapse, to their damage in the sum of $10,000. The answer to each of these complaints was a general denial. By the consent of all the parties, the two causes were consolidated and tried together, to the court and a jury.   A verdict was returned in favor of Farnandis and wife and Hamm for $7,175, and in favor of Morris and wife for $3,675.   The railway companies have appealed from a judgment entered upon the verdict.

The first question presented in the briefs is whether or not, under the pleadings and the evidence, the respondents were entitled to recover damages to their buildings, occasioned by

the excavation made by appellants in the land adjacent to that whereon the buildings were located. No negligence was claimed against the appellants, either in the pleadings or the evidence, respondents' position being that, if the excavation made by appellants in their own land or in the lands whereon they had a license to make excavations, were made in such a manner as to cause a subsidence of the soil of respondents' lands, whereby the buildings were caused to settle and crack and be injured, the appellants were liable, notwithstanding their work had been performed in the most careful and prudent manner. This contention was sustained by the trial court, and evidence was received and the jury were instructed upon that theory. Appellants cite numerous authorities to the point that the right to lateral support applies only to the land itself, and not to buildings or other artificial structures thereon, and the weight of authority seems to be that where one person excavates on his own land in a careful and prudent manner, he is not liable for consequential damages accruing to his neighbor. But this rule is modified to this extent:

". . . that an adjoining owner excavating on his own land is subject to this restriction, that he must not remove the earth so near to the land of his neighbor that his neighbor's soil will crumble away by its own weight and fall upon his land. But this right of lateral support extends only to the soil in its natural condition. It does not protect whatever is placed upon the soil increasing the downward or lateral pressure. If it did, it would put it in the power of a lot-owner, by erecting heavy buildings on his lot, to greatly abridge the right of his neighbor to use his lot. It would make the rights of the prior occupant greatly superior to those of the latter." *Transportation Co. v. Chicago,* 99 U. S. 635, 25 L. Ed. 336.

The rule is firmly established that,

"Every owner of real estate is entitled to have the soil preserved and supported in its natural condition, and the privileges of adjoining owners are so far limited that they may not so excavate or otherwise change the position of their

land as to leave that of their neighbor less firmly supported."
1 Am. & Eng. Ency. Law (2d ed.), 229.

See, also, *Larson v. Metropolitan St. R. Co.*, 110 Mo. 234,
19 S. W. 416, 33 Am. St. 439 and note. "Nor is his lia-
bility in any wise dependent upon the degree of skill or care
which he exercises." Monographic note to *Larson v. Metro-
politan St. R. Co.*, 33 Am. St. 450. See, also, *Baltimore etc.
R. Co. v. Reaney*, 42 Md. 117; *Schultz v. Bower*, 57 Minn.
493, 59 N. W. 631, 47 Am. St. 630; *Gilmore v. Driscoll*,
122 Mass. 199, 23 Am. Rep. 312. In order that these rules
may stand together and not be inconsistent, it must follow
that, when soil is removed from its natural position by one
owner and the soil of an adjoining owner is thereby permitted
to fall, such result is not a consequential damage, but is a
direct injury.

In the case of *Parke v. Seattle*, 5 Wash. 1, 31 Pac. 310,
32 Pac. 82, 34 Am. St. 839, 20 L. R. A. 68, this court held
that the city was liable for damages caused by grading the
street, whereby lands abutting on the street were deprived
of their lateral support. In the case of *Brown v. Seattle*,
5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161,
which was a case where an order was made restraining the
city from grading a street in front of Mrs. Brown's property
until the damage which would be caused by such grade was
first ascertained and paid, this court held an injunction was
proper, and in the opinion said:

"But the main question is, admitting the fact of injury,
would the respondent be entitled to compensation from the
city? Previous to the adoption of the constitution she would
have been without remedy, excepting for such injury as might
have occurred to her land alone, arising from the withdrawal
of support and its consequent actual falling in, or from the
negligence of the city in doing the work. . . . But the
constitution of this state (art. 1, § 16) provides that no private
property shall be taken or damaged for public or private
use without just compensation having been first made or paid
into court for the owner, and it is upon this prohibition that

the respondent bases her right to an injunction. The earlier constitutions of the several states in the Union contained, with but few exceptions, a provision that private property should not be taken for public use without just compensation. . . . After almost twenty years of discussion and decision in Illinois and other states, we put the words 'taken or damaged' into our constitution, and they must have their effect. . . . It is now too late to urge this argument [i. e. the word 'damage' gave no additional or greater security to the appropriator for public use] against the recovery of such damages as are threatened to be caused by the action of the city of Seattle here in question. Every court in which the point has been raised has decided in favor of the private citizen; but, were it now presented to us for the first time in the history of the phrase, we should not be disposed to view it in any way different from that expressed in the cases we have cited. If private property is damaged for the public benefit, the public should make good the loss to the individual. Such always was the equity of the case, and the constitution makes the hitherto disregarded equity now the law of it."

In the case of *Peters v. Lewis,* 33 Wash. 617, 74 Pac. 815, which was an action for damages by reason of drainage from defendants' adjoining premises, this court held that a counterclaim alleging that plaintiff had removed the earth abutting upon the line of its lot, thereby leaving the lot without its natural lateral support, which caused defendants' land to slide and the foundations of their houses to become weakened, and destroyed the natural surface of the ground, was proper matter for counterclaim. And in the case of *Smith v. St. Paul etc. R. Co.,* 39 Wash. 355, 81 Pac. 840, which was carefully considered by this court after two separate arguments had been permitted and many authorities cited upon the constitutional questions involved here, we held that a property owner may recover damages resulting from the operation of railway trains which jar the earth and otherwise physically disturb the property. It was said in that case:

"If a railroad company cannot carry on its business upon its own property without necessarily disturbing the physical

conditions of other property, it is evident that such company has not acquired sufficient property for the conduct of its business, and it should be required to pay such damages as the actual physical disturbance of the neighboring property entails thereupon."

These cases are decided upon the theory that the act complained of is an interference with the rights of property, and that the damage is direct and not merely consequential.

The effect of our decisions, as above stated, is to hold that for a physical injury or direct invasion of property rights, damages are recoverable under the provisions of the constitution that "no private property shall be taken or damaged for a public or private use without just compensation having been first made." It follows, of course, that the liability does not depend upon the degree of care or skill used to prevent damage. The question whether the damage to the buildings situated one hundred and twenty feet away from the nearest point of appellants' tunnel was caused by the removal of the lateral support of the soil or by shaking the earth by blasts was a question for the jury. But in either event the liability of the appellants was the same whether the damage was caused with or without negligence. The sinking and cracking of the earth was evidently not due to any increased downward or lateral pressure upon the soil by the buildings, because the cracks and sinking appeared between the buildings and the tunnel and extended through the buildings. If the weight of the buildings did not in any wise contribute to the sinking or cracking of the earth, then the removal of the earth was the direct cause of the damage both to the land and to the buildings. To hold under such circumstances that appellants would be liable only for the damage to the land, and not to the buildings, would be to follow the shadow of the old rule and to disregard the substance of it and the reason upon which it was based.

Appellants complain that the court erred in giving the following instruction:

"In determining what damages, if any, should be assessed to the plaintiffs by reason of the injuries to the land, if any were caused by the construction of the tunnel, you have a right to consider the use to which said land was put by the plaintiffs, and what damage, if any, the plaintiffs, S. C. Farnandis and R. H. Hamm in the one case, and Antone Morris and Perina Morris in the other case, will sustain thereby during their leasehold interest in the property."

It is claimed that this instruction permitted the jury to assess damages that were personal to the plaintiffs. We do not so construe the instruction, when read in connection with the other instructions. Just preceding this instruction the court instructed as to the elements of damage they might consider in reference to the buildings. There were two subjects of damage, viz., the land itself and the buildings, either or both of which may have been recovered for according to the injury. The use to which the land was adapted was proper to be considered in determining the value of the land and the damages sustained. *Seattle etc. R. Co. v. Roeder,* 30 Wash. 244, 70 Pac. 498. This instruction is not subject, we think, to the criticism made by the appellants.

There was some evidence to the effect that the cracks in the earth and the settling thereof might have been caused by the tapping of an underground stream or subterranean flow of water which caused the soil to be carried away. Appellants requested the court to give the following instruction:

"I charge you that, if you find from the evidence in this case that the cause of the injuries to plaintiffs' property, if you find the same was injured, was the tapping of an underground stream or stratum by the boring of the tunnel into the earth, and that such underground stream or stratum so tapped ran out, causing a subsidence of the soil on which plaintiffs' buildings stand, then the defendants would be under no liability for the damages so caused, and plaintiffs would have no right to recover therefor, and if you do so find, your verdict must be for the defendants."

The court gave this instruction, but modified it by adding the following:

"However, for this instruction to apply you must believe that the percolating or subterranean waters withdrawn were upon the railway company's own property. It would not apply if such water was withdrawn from underneath or below or in a public street or in property which was not the property of said railway company;"
thus, in effect, telling the jury that, while the appellants might have caused damage to the property without liability therefor, by tapping the subterranean flow of water on their own land, yet the easement in a public street did not authorize such damage without compensation. This modification was made by the court upon the theory that the city could grant no greater right than it possessed; and since the city would be liable for damage caused by removing the lateral support under the rule in *Parke v. Seattle* and *Brown v. Seattle, supra,* therefore the corporation using the street for private gain by authority of the city would be liable in the same way.

While many authorities are cited by the appellants to the effect that the rights of a municipality in its streets are not inferior to the authority of a private owner over his own land, we think the rule, as recognized and laid down by this court in the cases hereinbefore cited, under our constitution, is conclusive of the question that private property shall not be damaged for a public use without just compensation. It is true that the word "damaged" has been held to mean such damages as were recoverable at common law between individuals; but in view of the rule that the carrying away of land by its own weight is not consequential damage, but is an actual infringement and taking of property, we think the same rule should apply where the land is carried away by means of water which is released in a public street by any means which would amount to an actual taking and a resulting damage. Under statutes which are in substance the same as our constitutional provisions, the courts of Massachusetts have held, where the land of an adjacent owner is taken away by an

excavation on other lands, which excavation taps a subterranean stream of quicksand and water, permitting the soil of an adjoining owner to crack, that the parties making such excavation were liable for the damage. *Cabot v. Kingman,* 166 Mass. 403, 44 N. E. 344, 33 L. R. A. 45. It was said in that case:

"Whatever may be true of percolating waters, we think that the defendants had no right to take away the soil of the plaintiff in land which they had not taken under the statutes, and that it is immaterial that the soil was removed by means of pumps from the trench into which it had fallen by its own weight, or had been carried by percolating water. We are unable to distinguish the case from one where the soil falls in from the surface in consequence of an excavation in the adjoining land."

See, also, *Trowbridge v. Brookline,* 144 Mass. 139, 10 N. E. 796; *Marsden v. Cambridge,* 114 Mass. 490; *Lincoln v. Commonwealth,* 164 Mass. 368, 41 N. E. 489. Under this view, which we think is the correct one, it was not error prejudicial against appellants for the court to give the modification complained of.

The points made in appellants' brief, relating to the motion for a new trial and the instruction relating to the blast where no negligence is charged, are both disposed of by what we have said in connection with the points above discussed, and need not be further noticed.

It appears from the record that one of respondents' counsel, in arguing the question of damages to the jury, stated that respondents occupied to their tenants the relation of landlords, and in the event of the buildings getting out of order or condition, that the tenants would have a right of action against them; whereupon the following occurred:

"Mr. Gilman: I desire an exception. The counsel has no right to argue the law to the jury. Mr. Allen: Of course I have. Now, gentlemen, let him take an exception. I will repeat it, and if he can get an exception out of it, let him take it,—that Mr. Hamm and Mr. Farnandis and Mr. Morris

stand in the relation of landlords to these people, and in that
we are responsible to them for the building getting out of
repair and getting in bad repair, and that they have a right
of action against them for that, if they choose to exercise it,
and Mr. Gilman knows it."

At the close of the arguments, appellants' counsel orally re-
quested the court to charge the jury:

"That Mr. Farnandis and his associates have a certain in-
terest in the buildings and the property; if that has been
damaged by the railroad company the railroad company must
pay for it. The tenants have a certain interest in the build-
ings. Mr. Farnandis is not responsible if the interest is
affected and damaged by the railroad companies."

The request was refused and an exception allowed. The
fact that the requested instruction was not in writing was
waived by both the court and the counsel for respondents,
and leave granted to appellants to reduce the request to writ-
ing, which was done after the jury had retired. In view of
what had taken place between opposing counsel, it was clearly
the duty of the court to give the instruction as requested.
Upon the argument, respondents' counsel stated the measure
of damages erroneously to the jury. The plaintiffs were
clearly not liable to their subtenants for injuries to such ten-
ants by the rairoad companies without negligence or fault
on the part of the plaintiffs, and when the court said nothing
about the point in his instructions, and refused to correct
the erroneous impression so forcibly and repeatedly stated,
the jury were at liberty to believe that the statements of the
respondents' counsel were correct, and to assess damages
against the defendants for such items.

The plaintiffs themselves were tenants of the property
under a long lease. If they as tenants were entitled to re-
cover for the injuries alleged, their subtenants for the same
reason had the same rights for any substantial injuries done
them. Clearly the plaintiffs were not liable to their sub-
tenants for injuries done by third parties over whom the plain-
tiffs had no control. Counsel for respondents contend that

they have a right to argue the law to the jury. Conceding that they have, they must state it correctly, and when they make statements of law which are incorrect, it becomes the duty of the trial judge to correct them; especially, upon material points when a proper request is made therefor. Other statements were made in the argument of the case which were outside the record and should not have been made, but which we do not deem of sufficient importance of themselves to warrant a reversal, and since they will probably not occur upon a new trial, we shall not discuss them. Since the judgment must be reversed for the error above stated, it is unnecessary to discuss the errors alleged as to the amount of the verdict.

The judgment appealed from is reversed, and a new trial ordered.

ROOT, DUNBAR, FULLERTON, HADLEY, RUDKIN, and CROW, JJ., concur.