[No. 13709.  *En Banc.*  September 11, 1917.]

JOHN LOCHORE *et al.*, *Appellants*, v. THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS—STREETS — IMPROVEMENT — DAMAGES — REMOVAL OF LATERAL SUPPORT. A city is liable for the removal of lateral support to property near a street, in making an original grade, where it was negligent in leaving a clay bank exposed and unprotected, knowing or being charged with knowledge that it would result in disintegration of the bank and the consequent sliding of the soil (ELLIS, C. J., and MAIN, J., dissenting).

Appeal from a judgment of the superior court for King county, Ralston, J., entered May 22, 1916, upon granting a nonsuit, dismissing an action for damages through the removal of lateral support.  Reversed.

*Saunders & Nelson*, for appellants.

*Hugh M. Caldwell* and *James A. Dougan*, for respondent.

MORRIS, J.—Appeal from a judgment entered upon the sustaining of a challenge to the sufficiency of the testimony, in an action brought to recover damages for injuries claimed to have been sustained in the original grading of a street. The pertinent facts may be briefly stated as follows: Appellants are the owners of three lots abutting upon the west side of Arrowsmith avenue, Seattle. Arrowsmith avenue is parallel to and one block west of Rainier Boulevard, and on a hillside above the Boulevard. In January, 1914, the city graded and improved Rainier Boulevard according to certain plans and specifications which it had adopted and which required a deep cut in that portion of the boulevard east of and opposite to plaintiffs' lots. The soil stratification along Rainier Boulevard at the point of the cut is blue clay overlaid by a foot or two of vegetable mould. Soon after the cut was made and this clay bank exposed, it began to disin-

[1]Reported in 167 Pac. 918.

tegrate and slough off, gradually continuing until it involved all of the block between Rainier Boulevard and Arrowsmith avenue, and then extended across Arrowsmith avenue until it seriously involved appellants' property. The extent of this slide is not material, as the only question involved is whether or not appellants can recover.

The second amended complaint, upon which the case was tried, alleged that the grade to which Rainier Boulevard was cut was unreasonable and unnecessary; that the work was done in a careless manner and under defective plans; that the city knew, at the time of the grading, that the result would be injurious to plaintiffs' property, and that no provision was made for taking care of the exposed clay bank or to protect it from the natural effect of the surface water, or in providing necessary drainage for such water or for furnishing lateral support to the property lying to the west of the boulevard. As before stated, there is no question of the sufficiency of the evidence as to the character or extent of the injury suffered by appellants, the only question here involved being whether or not the case falls within what is known as the original grade doctrine. In support of the allegation of negligence, appellants' testimony was to the effect that the stability of a clay bank, such as was left exposed in the cut, depends upon the amount of the water to which the bank is exposed; that the nature of the clay soil in that region is such that it absorbs water very readily, and that the effect of such absorption, or of permitting surface water to come in contact with, the clay bank, is to immediately start disintegration, causing a sliding of the exposed bank; that, in turn, the new bank becomes saturated and a like effect occurs until, as the engineer testifying for appellants puts it, "you reach another line or suitable equilibrium." As further explanatory of the situation, we quote from the testimony of the engineer:

"When that cut was made in the clay, the bank of clay was exposed and that immediately started the ravelling action,

because the clay on the surface that was exposed, when the sun hit it, it cracked, just as you have seen cracks in clay in many places. The next rainy season came along and these cracks filled with water, and those little masses of clay sprawled off until they fell at the foot of the slope, and as the next layer would break, it would go through the same process, until it has worked back up to and beyond Lochore's property at the present time. . . . If you can conceive of a tier of blocks standing one after the other, each one supported by the block below, if you take out the block below, that would permit the next one to fall and when that fell, it would permit the next and so on until you reached the top of the slope, . . . as the support from the clay is undermined and allowed to flow out, that brings down the next mass above it on the up hill side."

The lower court, in making the ruling complained of, was of the opinion that, when it appeared that this was an original grade, the case was controlled by *Schuss v. Chehalis*, 82 Wash. 595, 144 Pac. 916, and *Best v. Chehalis*, 82 Wash. 601, 144 Pac. 918, and other like cases therein cited, in which we have held that a city is not liable to abutting property owners for the removal of lateral support in making an original grade of a dedicated street where the grading is done wholly within the limits of the street. This rule has become the settled law of this state. Without referring to the cases, it may be said the reason for the rule is found in variant expressions of the controlling principle that the right to make an original grade is implied in the grant of dedication and that the abutting property owner holds subject to this right whenever the city may see fit to exercise it. In so far as our cases hold to this rule, it will be noted that, in each case, damages were sought because of the removal of lateral support or the doing of some other act wholly within the limits of the street without evidence of negligence in the prosecution of the work. This appears in all the cases from the first announcement of the rule in *Fletcher v. Seattle*, 43 Wash. 627, 86 Pac. 1046, 88 Pac. 843, down to the *Schuss* and *Best* cases.

In the two last cases, notwithstanding allegations in the complaint to the contrary it was expressly found that there was no evidence of any negligent act on the part of the city. Stated otherwise, we have held that, in such cases, the city was performing a legal act in a proper manner and that damages flowing from such act would fall within the rule of *damnum absque injuria*. This case presents a different phase. The complaint alleged, and we have quoted sufficient of the testimony to indicate that there was proof from which the jury might find, that the city was negligent in leaving this clay bank exposed and unprotected, knowing or being charged with knowledge of the natural result of the disintegration of the bank and the consequent sliding of the soil behind it and to which it acted as a support. Save for the original grade feature, this case is analogous to *Johanson v. Seattle*, 80 Wash. 527, 141 Pac. 1032, where like injury occurred from like cause, save that in the *Johanson* case, following *Farnandis v. Great Northern R. Co.*, 41 Wash. 486, 84 Pac. 18, 111 Am. St. 1027, 5 L. R. A. (N. S.) 1086, we held that, if the damage was the proximate result of the regrade, it was immaterial whether or not it was the result of negligence in the doing of the work, but that the liability was founded upon the constitutional inhibition against damaging private property for public use without just compensation. The lateral support rule announced in these two cases as not dependent upon negligence, but as founded upon the constitutional provision requiring compensation for private property damaged by public use, was first announced in *Parke v. Seattle*, 5 Wash. 1, 31 Pac. 310, 32 Pac. 82, 34 Am. St. 839, 20 L. R. A. 68, where, prior to the adoption of the constitution, it was held that a municipality was liable for negligence in depriving an abutting owner of his lateral support in regrading its streets. This case was followed by *Brown v. Seattle*, 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161, where it was held that the dedication of a street to public use does not authorize a municipality to raise or lower the surface of a

street to any extent it may deem proper without, under the constitutional provision, subjecting itself to damages for injury to an abutting owner. Next came *Smith v. Seattle,* 18 Wash. 484, 51 Pac. 1057, 63 Am. St. 910, where a right of action was recognized in a property owner, whose lot was from 130 to 175 feet distant from the street, to recover damages for the negligent removal of his lateral support in regrading a street. Another late case is *Jorguson v. Seattle,* 80 Wash. 126, 141 Pac. 334, where it was sought to recover damages caused by the sliding of the soil of the lots upon one street growing out of the regrading of another. The action was defeated because of the failure of the property owner to show any damages sustained within thirty days prior to the filing of his claim and up to the date of trial. In speaking of the constitutional inhibition against the taking of private property for public use without just compensation, it was said:

"The above mentioned provision of the constitution was never intended to apply to consequential or resultant damages not anticipated in, nor a part of, the plan of a public work. It was never intended to apply to damages resulting to private property from the negligent or wrongful use of public property. As to such damages, tortious in their very inception, the injured person is remitted to his remedy on the case, as in other cases of tortious taking or injury. For example: Suppose, in the prosecution of an improvement, the city unnecessarily and negligently temporarily obstructs the ingress, or egress, or the access of light and air to private property neither taken nor in any manner required in the prosecution of the work. It is obvious that this would be an invasion of a property right, but not a taking or damaging within the meaning of the constitutional limitation upon the power of eminent domain. It would be a tort, pure and simple, for which an action for damages would lie independently of the constitutional limitation. Again, suppose the city, in improving a street or a city park, set off a blast which cast stones upon private property, littering the lawn or injuring the buildings. This would be also a simple tort, and nothing else, for which an action would lie and be pro-

tected by the due process clause of the constitution, even were § 16 of article 1 eliminated from that instrument. Of course, in the broad sense, the constitution, by the due process clause, protects every property right from tortious invasion, but that clause must not be confounded with the clause above mentioned, which is intended only as a limitation upon the otherwise unlimited sovereign power of eminent domain, not as extending an additional guaranty as against negligence or tortious wrongs or ordinary breaches of contract by municipal corporations."

It may be said that much of the above is dicta. It is quoted, however, as illustrative of the doctrine that a city is liable for its negligence or tort in prosecuting public work, and that it cannot protect itself from negligence by a plea that the damages were caused in the exercise of its sovereign capacity. In *Wood v. Tacoma,* 66 Wash. 266, 119 Pac. 859, one of the cases holding to the rule of nonliability in original grades, there was a charge of negligence in the collection of surface water upon the abutting lots. This claim is disposed of by holding that the city is not liable in damages for injuries to private property by the collection of surface water, as it is. an injury resulting from the proper exercise of a legal power. In considering this question of negligence, however, it was said:

"There remains to be considered the question of negligence. It must be conceded that a municipal corporation, like an individual, is liable for injuries resulting from the negligent exercise of legitimate powers."

The opinion then proceeds to state that there was no evidence that the city in that case did not furnish adequate drainage for the district, or evidence tending to show there was any improper or negligent construction. The case of *Hinckley v. Seattle,* 74 Wash. 101, 132 Pac. 855, Ann. Cas. 1915A 580, 46 L. R. A. (N. S.) 727, presents somewhat apposite principles as to the determinative rule, though the case differs from the *Johanson* case and the case at bar in that an injury was caused to a property owner a block down

the hillside by the sliding of the earth upon his lot due to the sinking of the street above pushing the lot abutting upon the street down upon his property. In the *Jorguson*, *Johanson* and *Hinckley* cases, the damages grew out of the regrading of the streets; but in none of those cases is it held that this fact in any wise determines or controls the right of action. In the *Schuss* case, the *Jorguson* and *Johanson* cases are referred to as regrade cases, but it was not intended, we take it, by this observation to mean that no element of damages recoverable in a regrade case would be recoverable in an original grade case. The intent of such observation is made clear in the succeeding sentence, where it was said: "There being no evidence of an encroachment upon the respondent's property or of negligence in the prosecution of the work, the city is immune from liability," thus leaving undetermined whether or not a city would be exempt from liability in an original grade case where there was evidence of an encroachment or of negligence in the doing of the work. Summing up these and various other cases from our own state, it is apparent that this court has sought to distinguish between cases where the invasion of a property right was a taking or damaging within the meaning of the constitutional limitation upon the power of eminent domain, irrespective of negligence, and cases of injury to private property in the wrongful use or negligent improvement of public property. In the one case, the remedy arises out of the constitutional limitation; in the other, it exists irrespective of that limitation.

Dillon in his Municipal Corporations, vol. 2 (4th ed.), § 987, in his opening statement of the rule of nonliability for consequential damages, when a municipality in grading its streets is acting within its powers and jurisdiction, confines the rule to cases where there has been "no want of reasonable care or want of reasonable skill in the exercise of the power."

Cooley, J., in *Pontiac v. Carter*, 32 Mich. 163, in holding that a city was not liable to abutting property owners for

damages in grading streets, irrespective of whether damages are consequential to an original or regrade, concludes his opinion by asserting that, while the city is exempt from all damages resulting from the doing in a proper manner of that which it has a right to do, it is not exempt from damages caused by negligence or trespass. In the note to *Hickman v. City of Kansas*, 23 L. R. A. 658, the annotator, in citing the rule that damages arising from the first grade or improvement of city streets are not recoverable by abutting owners, says such rule only applies in the absence of negligence, citing, among other cases, which sustain the exception, *Wallace v. Muscatine*, 4 G. Greene (Iowa) 373, 61 Am. Dec. 131; *Gardner v. Scranton*, 11 Pa. Co. Ct. Rep. 574; *Broadwell v. Kansas*, 75 Mo. 213, 42 Am. Rep. 406; *Ellis v. Iowa City*, 29 Iowa 229. See, also, *Stein v. LaFayette*, 6 Ind. App. 414, 33 N. E. 912; *Kemp v. Des Moines*, 125 Iowa 640, 101 N. W. 474; *Damkoehler v. Milwaukee*, 124 Wis. 144, 101 N. W. 706.

Our conclusion is that a city is liable in the original construction and grading of its streets, where there is sufficient proof that injury is suffered from any negligent act of the city in the performance of the work.

The judgment is reversed and the cause remanded for new trial.

HOLCOMB, MOUNT, FULLERTON, PARKER, and WEBSTER, JJ., concur.

CHADWICK, J. (concurring)—I concur in the result, but I believe the cases discussed by the court have no application to the facts of this case as revealed by the testimony. With the exception of the *Hinckley* case, they are cases where damages had resulted to abutting lots. The appellants in this case do not come within the law defining the rights of an abutting owner, nor is the city privileged to claim the benefit of establishing an original grade. The rights and liabilities of appellants, as "abutting owners," and of the city

were all absorbed in the grading and improvement of Arrow-smith avenue, the street abutting their property.

The damages in this case are recoverable under the general rules of law, just as appellants would have been entitled to recover if the city had operated a quarry three hundred feet away and had negligently blasted debris upon their property. The grading, which ultimately resulted in dam-age to appellants' property, was done on a street three hundred feet away. By gradual waste and recession, or "travelling," as suggested by one witness, the slide finally invaded and undermined appellants' lots. The testimony shows that the character of the property was such that the city knew, or ought to have known, that its plan was defective, in that it did not provide any method or means of counteracting the natural gravitation of the peculiar clay strata through which the cut was made. It is for this reason, and not because appellants arc to be treated as abutting owners who have suffered from the negligent construction of the street, that I concur in the judgment of the court.

MAIN, J. (dissenting)—I am unable to distinguish this case from the case of *Schuss v. Chehalis*, 82 Wash. 595, 144 Pac. 916, and the earlier holdings of this court there cited and reviewed. In the *Schuss* case, damages were sought against the city for the original grade of a street by which the lateral support from the plaintiffs' lots was removed. As the opinion states:

"The formation of the lots is soapstone or shale rock, overlaid with gumbo and black soil."

In grading the street the city made a vertical cut of about six and one-half feet at or near the line of the plaintiffs' lots, but wholly within the limits of the street. There was no evidence that the city encroached upon plaintiffs' property or that it was negligent in carrying on the work, "other than the admitted fact that it removed the lateral support in the manner stated." It was there held that:

"There being no evidence of an encroachment upon the respondents' (plaintiffs') property or of negligence in the prosecution of the work, the city is immune from liability."

In the present case:

"The soil stratification along Rainier Boulevard at the point of the cut is blue clay overlaid by a foot or two of vegetable mould."

The cut there referred to was made wholly within the limits of the street, as in the *Schuss* case, and there is no evidence of negligence in the prosecution of the work by the city. The majority opinion, if I understand it correctly, attempts to make negligence of the prosecution of the work in the original grade of a street and the removal of lateral support dependent upon the character of the soil of adjacent property. In other words, if the soil is of such character that, when the cut is exposed to the elements, it is reasonably probable that a slide will occur, then the city is negligent in the prosecution of the work. On the other hand, if the soil of the adjacent property is not such that there is a reasonable probability that it will slide when the cut is exposed to the elements, then there is not negligence in the prosecution of the work. This distinction is not recognized in the *Schuss* case, which, it seems to me, is parallel upon the facts, nor in any of the earlier holdings. If the *Schuss* case and the cases upon which it is based do not correctly state the law, they should be modified or overruled. To make a distinction where no substantial distinction exists tends to make the law confusing and uncertain. For the reasons stated, I dissent.

ELLIS, C. J., concurs with MAIN, J.