[No. 13984. *En Banc.* September 11, 1917.]

JOHN ALLBIN *et al., Appellants,* v. THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS—STREETS—IMPROVEMENT—DAMAGES—RE-MOVAL OF LATERAL SUPPORT. A city is liable for the removal of lateral support to property near a street, in making an original grade, where it was negligent in leaving a clay bank exposed and unprotected, knowing or being charged with knowledge that it would result in disintegration of the bank and the consequent sliding of the soil; and it is immaterial whether the property abuts on the street or not.

SAME—CLAIMS—RECITALS—SUFFICIENCY. A recital in a claim against a city for the removal of lateral support, in the nature of an account for damages, preceding an affidavit as to the residence of the claimant and the cause of the damage, is as much a part of the claim as the affidavit, and complies with a charter requiring the claim to describe the defect and injury, give the residence, and contain the items of damages, sworn to by the claimant.

TRIAL — CORRECTION OF ERROR — WITHDRAWAL OF MOTION. Under Rem. Code, § 303, authorizing relief from a judgment or order taken through mistake, inadvertence or excusable neglect, the court may allow withdrawal of a motion for voluntary nonsuit made upon suggestion of the court, formal judgment of nonsuit not having been signed.

Cross-appeals from a judgment of the superior court for King county, Smith, J., entered July 17, 1916, upon granting a nonsuit, dismissing an action for damages through the removal of lateral support. Reversed on plaintiff's appeal; affirmed on defendant's appeal.

*T. J. Casey* and *Preston & Thorgrimson,* for appellants.

*Hugh M. Caldwell* and *Patrick M. Tammany,* for respondent.

MORRIS, J.—This case, upon its merits, presents a like question to that just decided in *Lochore v. Seattle, ante* p. 265, 167 Pac. 918, that a city is liable for injury to prop-

[1]Reported in 167 Pac. 922.

erty from negligence in the original grading of streets. The only difference between the two cases lies in the situation of the property. In the *Lochore* case, the property was located one block from the graded street. In this case, the property abuts upon the street, a difference which, under the reasoning of the *Lochore* case, is immaterial. Upon the merits, the judgment must be reversed.

Two questions of procedure are presented which demand our attention. The first arises upon the city's objections to the sufficiency of the claim presented by appellant. The city charter, in referring to claims against the city for damages, provides that:

"All such claims for damages must accurately locate and describe the defect that caused the injury, accurately describe the injury, give the residence for one year last past of claimant, contain the items of damages claimed, and be sworn to by the claimant." Seattle charter, art. 4, § 29.

Appellants filed their first claim with the city on March 13, 1914. The first recital in this claim is a statement somewhat in the nature of an account against the city for damages to the property "by reason of improper and negligent grading of said Thirteenth Avenue West in front of said lots or pieces of property and encroachment upon said property and removal of lateral support thereto, $1,200." Then follows an affidavit showing the residence and post-office address of the claimants for a year last past, the grading of the street and excavation in front of the lots, leaving the property unsupported and in danger of falling into the excavation, with a statement that, for the last thirty days, the property has been sliding into the street, and that the injury is a continuing one. On February 25, 1915, the second claim was filed, which does not differ materially from the first, other than the recital of additional injury. On March 16, 1916, a third claim similar to the other two was filed. The city's attack upon the sufficiency of these claims was sustained by the lower court, it being of the opinion that

only the recitals included within the affidavit could be considered in determining the sufficiency of the claim; that the recitals preceding the venue of the affidavit were no part of the claim and could not be considered in determining its sufficiency, and that, inasmuch as the only charge of negligence was included in what preceded the venue, it was not sworn to within the meaning of the charter and hence could not be considered. In so ruling, we think the lower court was in error. The requirement of the charter is that the claim must describe and locate the defect causing the injury, contain the items of damage, etc., and be sworn to by the claimant. That which preceded the venue of the affidavit was as much a part of the claim as that which followed, and, so long as it was referred to by appropriate reference, is as much within the requirement of the charter as though following the venue. It will not be necessary to refer to our numerous decisions upon the sufficiency of claims under this and like charter requirements. We have said many times that these charter provisions should be liberally construed with the view of meeting the common sense purpose of their enactment to apprise city officials of the nature, location and character of injury in order that the city may investigate the claim for the purpose of its defense. The claims were sufficient to meet the charter requirement.

The next question arises out of the city's cross-appeal. Upon the trial judge's making his ruling upon the insufficiency of the claims, he suggested to counsel for appellant that the city's motion for dismissal would be granted unless appellant would move for a voluntary nonsuit. Thereupon, after some discussion as to its effect, counsel for appellant asked the court for a voluntary nonsuit, which was granted. Counsel for the city then said to the court: "If your Honor please, I understand that Mr. Casey wishes to join—and we will prepare an order granting the voluntary nonsuit . . . . or, if he cares to prepare the order, we would simply O. K. it." The court: "The motion will be shown to

be O. K'ed. before it is signed." On the next day appellant filed a motion to permit the withdrawal of the motion for a voluntary nonsuit and to reinstate the case. This motion the lower court granted, and treated the case as if it stood upon the city's motion to dismiss the action. From this order to vacate, the city appeals.

If any judgment had been entered upon appellant's motion for voluntary nonsuit the case would present a different question. It seems to have been considered by both court and counsel, at the time of the hearing of the city's motion, that some subsequent action would be taken by the court in the way of signing some formal order which would bear the O. K. of counsel. This was never done, and we think the lower court was within its discretion in permitting appellant to withdraw the motion for voluntary nonsuit before it ripened into judgment. In asking for voluntary nonsuit appellant followed the suggestion of the court. If, before judgment, appellant considered his action ill-advised he should be permitted to make his own record upon which to base his future action, rather than follow the advice of the trial judge as to what should be done. Abundant statutory authority is found in § 303, Rem. Code, empowering the trial court to relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, or excusable neglect. If this statute were not sufficient, there is ample inherent authority vested in trial courts to relieve a party from an embarrassing situation in which he finds himself by accepting the trial judge as associate counsel in his case.

The judgment is reversed upon the main appeal and affirmed upon the cross-appeal.

Mount, Holcomb, Fullerton, Parker, and Webster, JJ., concur.

Chadwick, J., concurs in the result.