THEODORE McCULLOUGH *et al. vs.* ST. PAUL, MINNEAPOLIS & MANITOBA
RY. Co. *et al.*

Submitted on briefs Nov. 30, 1892. Decided Dec. 16, 1892.

**Lateral Support of the Soil of Adjacent Land.**

The removal, by excavating, by a railroad company in constructing its
road, of the lateral support to the soil adjoining its right of way, is a
taking, and the right to remove it can be acquired only by purchase or
condemnation.

**Condemnation Proceedings not Covering Right to Remove Lateral
Support.**

In proceedings for taking for right of way a defined strip, the petition
and order appointing commissioners not showing an intent to acquire the
right to remove lateral support, it is presumed the commissioners did not
allow damages for so doing, and the right to do it does not pass by the
proceedings.

Appeal by plaintiffs, Theodore McCullough and Henry Krienkamp,
from an order of the District Court of Hennepin County, *Hicks*, J.,
made April 6, 1892, denying their motion for a new trial.

Plaintiffs owned lots one (1) and two (2) in block five (5) of
Oswald's Addition to Minneapolis. The Minneapolis and North-
western Railway Company, in constructing its line of railway in
1880, along the side of lot one, excavated the earth on its right of
way to the depth of twenty feet without constructing adequate lateral
support of the adjacent soil of the plaintiffs' lots. The cut was
through moist slippery clay, rendering it difficult to keep open the
ditches on the side of the railroad tracks. This action was com-
menced in 1891. The complaint alleges that within three years
prior to the commencement of the action, the earth of the lots had
given away, sunk and fallen in, until lot one had entirely fallen
away and lot two had sunk to a considerable extent, to plaintiffs'
damage $3,000.

The defendant, the St. Paul, Minneapolis & Manitoba Railway
Company, answered that the Minneapolis and Northwestern Rail-
way Company had in August, 1880, by condemnation proceedings,

acquired the right of way for its road over the adjacent land and had paid to John C. Oswald, the then owner of the entire tract, $15,000, the assessed compensation for the strip of land taken and for injuriously affecting the adjacent property; that Oswald had since subdivided the property into blocks and lots, and on November 1, 1887, conveyed to the plaintiffs the two lots in question, and that the defendant on April 23, 1883, acquired by deed the rights and became the grantee and successor of the Minneapolis and Northwestern Railway Company. At the close of the evidence, the judge directed the jury to return a verdict for the defendant. The plaintiffs excepted, moved for a new trial, and being denied, appeal.

*Robert D. Russell*, for appellants.

If land sinks and falls away in consequence of the removal of the lateral support, the owner is entitled to damages to the extent of the injury sustained. 3 Sutherland, Dam., 417; *McGuire* v. *Grant*, 1 Dutcher, 356; *Lasala* v. *Holbrook*, 4 Paige, 169; *Foley* v. *Wyeth*, 2 Allen, 131; *Kopp* v. *Northern Pac. R. Co.*, 41 Minn. 310.

The award in the condemnation proceedings did not cover compensation for damages of this character; nor did the fact that the railroad company acquired a right of way through this body of land and along the side of these lots, relieve it from the obligation of lateral support to the adjoining property. *Lancashire & Y. Ry. Co.* v. *Evans*, 15 Beav. 322; *Lawrence* v. *Great Northern Ry. Co.*, 16 Q. B. 643; *Richardson* v. *Vermont Cent. Ry. Co.*, 25 Vt. 465; *Nichols* v. *City of Duluth*, 40 Minn. 389; *Weaver* v. *Mississippi & Rum Riv. Boom Co.*, 28 Minn. 534; *Stodghill* v. *Chicago, B. & Q. Ry. Co.*, 43 Iowa, 26; *Jacksonville, N. W. & S. E. R. Co.* v. *Cox*, 91 Ill. 500; *People* v. *Canal Appraisers*, 13 Wend. 355; *Cott* v. *Lewiston R. Co.*, 36 N. Y. 214; *Arimond* v. *Green Bay & Miss. Canal Co.*, 31 Wis. 316; *Marvin* v. *Brewster Iron Mining Co.*, 55 N. Y. 538; *Yandes* v. *Wright*, 66 Ind. 319; *Farrant* v. *First Div. St. Paul & Pac. R. Co.*, 13 Minn. 311, (Gil. 286;) *Gray* v. *First Div. St. Paul & Pac. R. Co.*, 13 Minn. 315, (Gil. 289.)

When damages are assessed in an *ad quod damnum* proceeding for a railroad right of way, only such damages as will naturally and

reasonably flow from a lawful use of the right of way can be taken into account by the commissioners called to make the assessment. *Porterfield* v. *Bond*, 38 Fed. Rep. 391; *Denver City Irrigation & Water Co.* v. *Middaugh*, 12 Col. 434; *Calhoun* v. *Palmer*, 8 Gratt. 88; *Whitworth* v. *Puckett*, 2 Gratt. 528.

*Benton, Roberts & Brown,* for respondent.

The claim of appellants depends upon the effect of the condemnation proceedings by which respondent's grantor obtained its right of way. And this depends on the statute under which they are had. 1878 G. S. ch. 34, § 18. The language of this statute covers such damages as shall result to any person from the construction of the railway. It provides for the taking of land and for injuriously affecting land. The award of commissioners in express terms gives damages for the injurious effect of the construction of the railroad upon the remainder of the property after describing the right of way through it. Pierce, Railroads, 174; Redfield, Railways, (6th Ed.) 273; Mills, Em. Dom. § 216; Wood, Railway Law, 601, 738, 871; *Boothby* v. *Androscoggin & K. R. Co.*, 51 Me. 318; *Hortsman* v. *Covington & L. R. Co.*, 18 B. Mon. 218.

Under this statute the damages, as well prospective as present, must be assessed at once, and no recovery can be had for unforeseen injury more than in any case of a recovery of damages for a tort. Redfield, Railways, 357, n. 14; *Aldrich* v. *Chester R. Co.*, 21 N. H. 359; *Eaton* v. *Boston, C. & M. R. Co.*, 51 N. H. 504; *Heard* v. *Middlesex Canal Prop.*, 5 Met. 81; *Call* v. *Middlesex Co. Comrs.*, 2 Gray. 232; *Locks & Canals Prop.* v. *Nashua & L. R. Corp.*, 10 Cush. 385; *Lafayette Plank Road Co.* v. *New Albany & S. R. Co.*, 13 Ind. 90; *Fellowes* v. *City of New Haven*, 44 Conn. 240; *Cheever* v. *Shedd*, 13 Blatch. 258; *Rome* v. *Omberg*, 28 Ga. 46; *Mitchell* v. *Mayor, etc., of Rome*, 49 Ga. 19; *Hoffer* v. *Pennsylvania Canal Co.*, 87 Pa. St. 221.

GILFILLAN, C. J. The predecessor in interest of this defendant filed its petition for the appointment of commissioners to determine the compensation to be paid to John C. Oswald and other owners for

the taking of the land necessary for the construction of its railway, and they were accordingly appointed. The petition, and the order appointing them, are not set forth in the record; but the award of the commissioners, (which must be presumed to follow the petition and the order,) so far as affects the land involved in this action, is set forth as follows: "That the said commissioners, after such examination and hearing, determined, appraised, and awarded, and hereby do determine, appraise, and award, to the owners of such land and property, and of any right proposed to be taken or injuriously affected by the prosecution of the petitioner's enterprise, the following amount of damages, as compensation arising to them, respectively, by reason thereof, to wit: For the taking of a strip of land one hundred feet wide, being fifty feet on each side of the center line of the petitioner's road, as now located and in course of construction across that part of lots one and six, section twenty-eight, in town twenty-nine, range twenty-four, in Hennepin county, lying south of Bassett's creek, and west of the land of the Monitor Plow Works, except that part thereof belonging to Julius Leber; and for injuriously affecting the remainder of said lots, the sum of $15,000, which we award to John C. Oswald, the owner thereof." Oswald afterwards platted his part of said lot one, not so taken, into city lots, and the plaintiff is the owner, deriving title through him, of two of such lots abutting on the one hundred foot strip so taken by the railway company. The company, in constructing its road in the usual manner, excavated to a depth of eighteen or twenty feet, on the strip so acquired by it, up to, or very nearly to, the line dividing that strip from the plaintiff's lots. It endeavored, successfully at first, to sustain the soil at the side of the excavation by driving piles; but finally, from some cause, the piles gave way, and all support on that side to the soil of plaintiff's lots being removed, a large part of the surface of the lots slid into the excavation. To recover damages for this, the action is brought.

The right to the lateral support of adjacent soil is fully recognized in this state as an absolute right, so that, if the owner of such adjacent soil remove the support, he is liable, without any question of negligence, for whatever injury ensues to the soil of his neighbor.

*Dyer* v. *City of St. Paul,* 27 Minn. 457, (8 N. W. Rep. 272;) *Nichols* v. *City of Duluth,* 40 Minn. 389, (42 N. W. Rep. 84.)

Those cases hold also that, in respect to this right, a municipal corporation, in its title to streets, (where the right to remove such support has not been acquired by condemnation,) stands on the same footing as an individual owner. A railroad corporation stands on the same footing. To justify its removal of the lateral support to the soil of an adjacent owner, it must show a right to do so acquired either by purchase or condemnation. As there was no purchase of the right in this case, the only question is, did the company acquire it by the condemnation proceeding shown. We have stated the purpose of the petition, and set forth that part of the award relating to Oswald's land, to show that no interest in the soil outside of the one hundred foot strip was expressly sought to be condemned, or was by the award expressly condemned. The right to remove the soil of another, whether by taking away the natural lateral support, or otherwise, is an interest in such soil. Upon the condemnation proceedings that right could be held to pass to the company only, by holding that damages which might ensue from the exercise of such a right were included in the sum awarded. In collateral proceedings it is to be conclusively presumed that the commissioners passed upon and allowed all legitimate items or elements of damage to the landowner, and no other. In respect to such damage, the landowner has no remedy but in the condemnation proceedings.

It is not presumed, however, that the commissioners have assumed that the company will be guilty of any wrongful or negligent act, or that it will take any more than is set forth in the petition and order. They would have no authority to assume either, or to assess the damages upon such assumption. The description in the petition and order of the property sought to be taken is the limit of their authority to assess damages for taking. Had the petition and order in this case shown that the company was to acquire, not only the strip described for a right of way, but the right, by excavating, to remove the lateral support to the adjoining land, the award would be held to cover all damages to the owner by depriving him of the right, and the right to remove the lateral support would pass by the

proceedings to the company. But the petition and order were for ascertaining the damages to be paid for taking the strip one hundred feet wide out of the tract of which it was a part, for the purpose of constructing and maintaining a railroad upon it, and the damages caused to the remainder of the tract, by putting the strip to that use. To justify itself, the company must stand on this proposition,—no other will suffice: That, having acquired the right to a strip one hundred feet wide on which to construct and maintain its railroad, it may, wherever excavating may be, or at any time may become, necessary or expedient and prudent in constructing its road, measure the one hundred feet at the bottom of the excavation, instead of on the original surface of the ground, and may maintain the slopes on the adjoining land instead of on its own strip, unless the owner shall see fit to build a retaining wall to keep his land in place. The proposition would apply as well to fills and embankments where necessary, expedient, or prudent, and, if sound, would justify the company in claiming that it might measure the one hundred feet at the top of the embankment, leaving its slopes to rest on the soil of the adjoining owner, unless he should build a wall to prevent it. In either case it would be constructing and maintaining the railroad, not on the strip taken for the purpose, but in part, at least, on the adjoining land, and that would be a taking requiring compensation to justify it. *Weaver* v. *Mississippi & Rum River Boom Co.*, 28 Minn. 534, (11 N. W. Rep. 114.) It is easy to conceive a case where the cost of the wall would exceed the value of the adjoining lot, and where the slope would occupy the whole lot, or so much of it as to leave the remainder valueless, and in such a case the whole of the lot would be practically taken.

The commissioners were bound to assume that the company or its engineers had ascertained how much land was necessary to construct and maintain the railroad, and had framed the petition accordingly, and were not at liberty to speculate on whether it might be necessary to encroach on adjoining land. Their only function was to assess the damages for taking the land so described out of the tract of which it was a part, and the damages to the remainder of the tract inci-

dent to constructing and maintaining a railroad on that land. It is to be assumed they allowed no other damages.

Order reversed.

(Opinion published 53 N. W. Rep. 802.)