[No. 9887. Department One. December 2, 1911.]

PETER CASASSA et al., Appellants, v. THE CITY OF SEATTLE et al., Respondents.[1]

EMINENT DOMAIN—JUDGMENT—CONCLUSIVENESS. The judgment in condemnation proceedings concludes the parties and their privies as to all matters which were put in issue.

EMINENT DOMAIN—DAMAGES—REGRADE OF STREET—SLOPE ON LOTS—AWARD — RES JUDICATA — MATTERS CONCLUDED. In condemnation proceedings to regrade a street by making a deep cut and a slope of forty-five degrees on abutting property to meet the cut, an award of damages to the property covers only the damage to the lots arising from the cut in the street and the specified slope on the lots, and not damages for the removal of lateral support resulting from the fact that the nature of the soil was such that a slope of forty-five

[1]Reported in 119 Pac. 13.

degrees was not sufficient to support the balance of the lot and prevent the remaining soil from falling into the street; and it is immaterial that the ordinance and petition required the condemnation of all lands and rights necessary to be taken, used, or damaged; since the city determined what slope was necessary and sufficient for lateral support, and that question will not be litigated in the condemnation proceedings.

MUNICIPAL CORPORATIONS—IMPROVEMENTS — DAMAGES — LIABILITY OF CONTRACTOR. Where, under the authority of condemnation proceedings, a city made a regrade of a street and a slope of forty-five degrees on abutting lots, but the nature of the soil was such that the slope was not sufficient for lateral support, and the balance of the lots were damaged by slides, the city, and not the contractor doing the work, is liable for the damage, where the slides would have occurred whether the work had been carefully done or not.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 11, 1911, in favor of the defendants, dismissing an action for damages, upon withdrawing the same from the consideration of the jury. Affirmed in part and reversed as to the city.

*Walter A. Keene* and *E. H. Guie*, for appellants.

*Leander T. Turner, Sandford C. Rose*, and *O. B. Thorgrimson*, for respondent Lewis & Wiley.

*Scott Calhoun* and *H. D. Hughes*, for respondent City of Seattle.

MOUNT, J.—Plaintiffs brought this action to recover damages caused by a regrade of Tenth avenue and Plummer street, in the city of Seattle. After the plaintiffs had introduced all of their evidence, the trial court was of the opinion that the defendants were not liable, and therefore discharged the jury and dismissed the action. The plaintiffs have appealed.

It appears that the plaintiffs are the owners of two city lots, on the east side of Tenth avenue, and immediately in front of the intersection of Plummer street with Tenth avenue, in the city of Seattle. This avenue extends north and south, while Plummer street extends west from Tenth avenue.

The plaintiffs' property, prior to the regrade, had been improved, and two frame dwelling houses had been erected thereon. The lots were level with the streets. They were situated on the west slope of what is known as Beacon Hill. Immediately to the east of these lots and in the rear thereof, the hill rises abruptly to a considerable height, and to the westward of Tenth avenue the hill slopes down toward the waters of the Sound. The elevation of the lots is about midway between the waters of the Sound and the summit of the hill. In the year 1906, the city of Seattle by ordinance determined to regrade both Plummer street and Tenth avenue, thereby making a cut in front of the lots to a depth of from 55 to 58 feet. The plan was to make a one-to-one slope from the street upon the lots, which means to cut down the front part of the lots at an angle of forty-five degrees. This ordinance provided for the ascertainment and payment of compensation for property taken or damaged in the change of grade. Thereupon the city, by an action in condemnation, proceeded against the owners of the lots to acquire the right to make the grade and slope as above stated. That action resulted in an award of damages in the sum of $1,000, which the city paid to the then owners. Thereafter the plaintiffs in this action acquired the title to the lots, and the city let a contract to the defendant Lewis & Wiley Company, to make the grade.

Before the work was commenced in front of plaintiffs' property, the plaintiffs caused the buildings to be removed to the rear of the lots and beyond where the slope would reach. The defendant Lewis & Wiley Company proceeded, as required by the contract with the city, to make the cut and slope. This was done by blasting and sluicing. The formation of the hillside was a stratified blue clay which was subject to slides. This fact appears to have been known to the city officers prior to the condemnation. While the excavation was in progress, the soil of plaintiffs' lots by its own weight slid beyond the slope as provided into the ex-

cavation in the streets, so that the houses were destroyed and
the lots themselves left in an irregular and uneven condition.
The city ordinance under which the condemnation proceed-
ings were had provided that,

"All the lands, rights, privileges, and other property
necessary to be taken, used or damaged in the grading or
regrading of the streets in question and approaches thereto,
in conformity with such established grades, and in the con-
struction of the viaducts and slopes and retaining walls for
cuts and fills upon the property abutting upon said streets
and approaches thereto, are hereby condemned and appropri-
ated for the public use, for the purpose of making such
changes of grade and in the construction of the necessary
viaducts and slopes and retaining walls in the grading and
regrading of said streets."   Seattle Ordinance, No. 13,320.

The condemnation petition also recites that the object for
which the proceeding was brought was to ascertain the dam-
ages to the land and property rights necessarily taken or
damaged by reason of the proposed improvement, and by
the construction of the necessary viaducts and slopes and
retaining walls for cuts and fills on abutting property in the
manner prescribed by said ordinance, and for a release from
all liability to the owners of such property, or others having
an interest therein that may be damaged or injuriously af-
fected by reason of the improvement provided for in said
ordinance.   The trial court, upon these facts, was of the
opinion that the purpose of changing the slopes was to pro-
tect the street and travel thereon from slides which might
occur, and that the whole damage to the property by reason
of the cut was determined in the condemnation proceedings
and paid to and accepted by the owners of the property at
that time; and because the character of the soil and its dis-
position to slide was known, the damages which occurred on
that account were, or should have been, tried and determined
in the condemnation proceedings, and may not be tried in
this action, even though the damages were actually greater
than might have been anticipated at that time.

This court has many times held that parties and their privies are concluded as to all matters which were put in issue in the condemnation proceedings. *Compton v. Seattle*, 38 Wash. 514, 80 Pac. 757, and cases there cited. In *Parke v. Seattle*, 5 Wash. 1, 31 Pac. 310, 32 Pac. 82, 34 Am. St. 839, 20 L. R. A. 68, this court held the city liable for damages caused in grading the street, whereby the abutting land was deprived of lateral support; and in *Brown v. Seattle*, 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161, this court held that the city may not lower the surface of the street without subjecting itself to damages for the injury thereby occasioned to the abutting owner. It is apparent from the rules laid down in these cases, that the city was liable for damages caused by the removal of the lateral support to the land abutting upon this deep cut. It is also apparent that, if the city condemned the right to make a cut 58 feet deep in front of this property, the judgment in that condemnation proceeding was conclusive of all damages which were or could have been litigated therein; and if the city without negligence proceeded to make the cut, no further liability would be incurred, although greater damages might result than were covered by the award.

In this case it is conceded that the city, in addition to the cut, undertook to make a slope of one-to-one upon the abutting lots. The purpose of this slope is apparent. It was to so cut down the lots that the remaining soil thereon would provide for the lateral support. If the remaining soil would stand upon the slope, the street and travel thereon would thereby be protected, and the only injury, if any, to the lots by reason of the regrade would be the removal of the wedge-shaped tract and the difference between the level lots and the lots in the elevated position above the street. The purpose was therefore two-fold, (1) to protect the street, and (2) to lessen the damage by obviating the question of lateral support. The street was already a public street, and the city did not have to condemn any portion for a street.

The city had a right to change the grades, provided it did not damage the adjoining lots. *Parke v. Seattle, supra.* The condemnation proceedings gave the city the right to enter upon the lots in question and to construct the slope. As above stated, the theory of the city, no doubt, was that, when the designated slope was constructed, the soil would not slide of its own weight, and the city would thus reduce or entirely obviate the damages caused by the removal of the lateral support. The city assumed that the one-to-one slope would be sufficient for that purpose, and condemned and paid for the right to make that slope to a depth of 58 feet in front of the lots. The buildings located upon the lots were then moved back so that no part thereof was upon the slope. When the contractors for the city proceeded with the work of excavation, the slope was not sufficient to hold the soil, which on account of its character slid into the cut, and carried with it the houses, which were completely demolished.

Respondents now maintain that, because the ordinance required all the lands, rights, and privileges and other property necessary to be taken, used or damaged in the grading or regrading of the streets, and because the petition in condemnation recites that the object for which the proceeding was brought was to ascertain the land and property rights necessarily taken and damaged, and because it was the duty of the lot owners to litigate in the condemnation proceedings every ground of recovery which might have been presented therein, therefore the judgment in the condemnation was *res adjudicata* of the damages claimed in this action. We think there could be no doubt of the application of this rule if the city had taken no more than the slope designated, or substantially no more, as was done in the *Compton* case. It seems plain that the city had a right to take by condemnation such lands and privileges as were necessary to construct the street as proposed. It also seems plain that the city had the right to determine in advance what quantity of land was reasonably necessary to be taken, in order to protect the

street or to protect the lateral support of the abutting property. The property owner could not decide for the city what it was necessary for the city to take. *State ex rel. Burrows v. Superior Court,* 48 Wash. 277, 93 Pac. 423, 125 Am. St. 927, 17 L. R. A. (N. S.) 1005. When the city in this case determined that it would take only sufficient land to make a slope of forty-five degrees, the city, as well as the property owner, was bound by that determination. The city in substance thereby said to the property owner: "This much of your property and no more is necessary to be taken. This will protect the street from earth which may fall by reason of the taking away of the lateral support. It is sufficient and all that is necessary." The damages fixed by the award in condemnation were for the part definitely taken and no more, and for the injury to the remainder on account of the part actually taken. We think the question whether the city took sufficient property in the condemnation proceeding could not have been properly litigated there. It would certainly be unreasonable to hold that the city, having taken a parcel of land definitely located, might take as much more as subsequently proved necessary even to the destruction of the buildings upon the land outside of the part taken, without being liable for additional damages.

It appears that the defendant Lewis & Wiley Company was a contractor who did the work as directed by the city. There may be some slight evidence of negligent work, but it is also shown that the damage would have resulted had the work been carefully done. It is apparent, therefore, that, if there is any liability, the city and not the contractor is responsible.

As to the defendant Lewis & Wiley Company, the judgment is therefore affirmed; but as to the city, the judgment is reversed, and the cause remanded for a new trial.

DUNBAR, C. J., PARKER, and GOSE, JJ., concur.