[No. 19072. Department One. April 13, 1925.]

## YETTE DAVIS, *Respondent*, v. THE CITY OF SEATTLE, *Appellant*.[1]

EMINENT DOMAIN (143)—DAMAGES—REGRADE OF STREET—AWARD —RES JUDICATA—MATTERS CONCLUDED. Condemnation proceedings whereby the city acquired nothing more than the right to lower the grade of streets, and make a one-to-one slope on abutting property, does not authorize the removal of lateral support, or compensate for damages from such removal through the occurrence of slides some years later.

MUNICIPAL CORPORATIONS (185, 190)—IMPROVEMENTS—REGRADE OF STREETS—NEGLIGENCE—REMOVAL OF LATERAL SUPPORT. The fact that the regrade of streets was not negligently done, is no defense to an action against the city for damages by reason of the removal of lateral support of the abutting property.

APPEAL (451)—REVIEW—HARMLESS ERROR—EVIDENCE. Error cannot be assigned upon the receipt of evidence tending to show negligence, where the case was tried to the court, and it was found that there was no negligence.

MUNICIPAL CORPORATIONS (191) — IMPROVEMENTS — REMOVAL OF LATERAL SUPPORT—MEASURE OF DAMAGES. In an action against a city for the removal of lateral support by the regrade of streets, which thereafter caused slides on the abutting property, the measure of damages is the difference between the value of the property immediately before the slide (not taking into consideration that the slide might occur) and its value at the time of the trial (not taking into consideration that there might be future slides).

[1]Reported in 235 Pac. 4.

Appeal from a judgment of the superior court for King county, Smith, J., entered July 3, 1923, in favor of the plaintiff, in an action for damages for the removal of lateral support, tried to the court. Affirmed.

*Thomas J. L. Kennedy* and *Ray Dumett* (*Edwin C. Ewing,* of counsel), for appellant.

*Donworth, Todd* and *Higgins,* for respondent.

BRIDGES, J.—This is another of the so-called Jackson street regrade cases from Seattle.

Ever since 1889, the plaintiff has been the owner of a tract of land located at the northeast corner of Main street and Ninth avenue south. Shortly after she became the owner, she improved the land by erecting buildings thereon. Jackson street is immediately to the south of Main street. The original grades of Main and Jackson streets and all others in the immediate vicinity were very steep and, for the most part, conformed to the natural level of the ground. In 1905, the city determined to make an easier grade on Jackson and adjoining streets and enacted ordinances with that purpose in view. In 1906, it commenced condemnation proceedings with the view of acquiring the right to regrade those streets and to reconstruct them according to the newly established grade. It sought to, and did, acquire the right to make a cut in Main street and Ninth avenue south where they adjoined plaintiff's property of some 20 or 30 feet and to make a one-to-one slope on her lands. To acquire these rights the city paid the plaintiff $1,500 as damages. The actual work of regrading was done in 1908 and 1909. Soon after it was completed, extensive slides of earth occurred. These did not affect the plaintiff's property until early in 1923. During January and February of that year the slide had so affected her property as that two of

the buildings thereon were condemned as unsafe and
another collapsed and was entirely destroyed. The
plaintiff filed with the city her claim for this damage
and instituted this suit. The case was tried by the
court without a jury. The city has appealed from a
judgment fixing damages at $5,000.

It seems to be claimed by the appellant that the
effect of the original condemnation was to pay the
respondent for any and all damage that might accrue
to her as a result of such regrade. We cannot agree
with this view. This action is based on the ground
that the appellant has removed the lateral support of
respondent's lots. That question was not involved in
the condemnation suit. There the city undertook to
acquire nothing more than the right to lower the grades
of the streets and make a one-to-one slope on respond-
ent's property. It did not undertake to obtain the
right to remove the lateral support of respondent's
property, nor was she compensated for any damage
because thereof. It is conceded that, at the time of
the bringing of the condemnation suit, and at the time
the regrade work was actually done, no person knew
that there would be any slides as a result thereof, nor,
indeed, did any person at that time anticipate such
slides. It is doubtless true that the city there might
have acquired the right to remove the lateral support,
but it did not. We deem it unnecessary to discuss this
question further, because we have had it before us
previously and the matter has been fully reviewed.
*Casassa v. Seattle,* 66 Wash. 146, 119 Pac. 13; *Hinckley
v. Seattle,* 74 Wash. 101, 132 Pac. 855, Ann. Cas. 1915A
580, 46 L. R. A. (N. S.) 727; *Farnandis v. Seattle,* 95
Wash. 587, 164 Pac. 225.

The appellant makes an elaborate argument force-
fully but courteously criticizing a number of our de-
cisions on these regrade cases where we have said that

the property owners' rights were protected and controlled by our constitutional provision that " . . . no private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, . . . " Article 1, § 16. Its argument appears to be that the constitutional provision has nothing to do with this kind of action, but that it is controlled entirely by the common law on the subject. An engaging argument has been made, but we refuse to be here drawn into the intricacies of the subject, because we are wholly unable to see that the rights of the parties to this particular case would be any different under the common law rules than under the doctrine of our cases holding that the rights of the parties are controlled by the above constitutional provision.

It seems to be the contention of the city that its demurrer to the complaint should have been sustained for the reason that it does not allege that the regrade work was negligently or carelessly done, and that the court erred in entering judgment in favor of the respondent because it found that the testimony failed to show any such negligence. While the testimony shows that the respondent's property was improved by buildings thereon, the court correctly found that those improvements had nothing to do with the slide; that it would have occurred had the property been unimproved. Under these circumstances, negligence is not involved. The rule is that the owner of land has the right to the lateral support from the adjoining soil and that an adjacent proprietor may not remove the earth from his property to such an extent as to withdraw that support; and if he does so he is liable, and such liability is not dependent upon the care or skill exercised by him in so doing. In other words, if one owner so interferes with or removes the soil from his

own land as to deprive the adjoining owner of the
natural support it previously had, and there be a
slide caused thereby, he will be liable in damages with-
out regard to negligence, because he has thereby done
something to the other's damage which he had no right
to do. The wrong consists in removing the soil, and
not in the manner of doing the work. Negligence be-
comes important only where the removal of the lateral
support causes the adjoining land to slide only because
of the weight of the buildings thereon, and that situa-
tion is not involved in this case. 1 R. C. L. 380 *et seq.*
In several of the slide cases which have been before
us we have recognized the rule of law. thus stated.
The case of *Kent v. Seattle,* 121 Wash. 327, 209 Pac.
529, was similar to this one. There we said:

"The judgment is sought to be sustained upon the
theory that the complaint alleged negligence and that
the cause was tried upon the theory, both by the ap-
pellant and the respondent, that negligence was a
necessary element. In cases of this kind it is not
necessary that negligence be shown before a recovery
can be had."

To the same effect see *Smith v. Seattle,* 20 Wash.
613, 56 Pac. 389; *Farnandis v. Great Northern R. Co.,*
41 Wash. 486, 84 Pac. 18, 111 Am. St. 1027, 5 L. R. A.
(N. S.) 1086; *Johanson v. Seattle,* 80 Wash. 527, 141
Pac. 1032.

It is said that in two or three of our previous cases
we have said that negligence in a case of this character
was a controlling element. It may be that we have
used language which would seem to indicate that dam-
ages of the character here involved are based upon
negligence, but for the most part such language was
incidental to the question under decision and not meant
to announce a fundamental proposition.

It is also claimed by the appellant that, while no

negligence was alleged in the complaint, the court received some testimony tending to show negligence. This could not be reversible error, for at least two reasons; first, because the trial court stated that it did not find that the city had done its work negligently; next, because the case was tried to the court without a jury and we will assume that, in reaching his conclusions, he did not consider incompetent testimony. *Kent v. Seattle, supra.*

The appellant claims that our decisions are conflicting as to the measure of damages in cases of this kind. It calls our attention to the case of *Island Lime Co. v. Seattle,* 122 Wash. 632, 211 Pac. 285, the facts in which were similar to those here, and that we there held that the correct measure of damages was the rental value of the property, while here the measure used by the trial court was the difference in the value of the property immediately before the slide affected respondent's property (not taking into consideration that a slide might occur) and its value at the time of trial (not taking into consideration that there might be future slides).

But appellant does not claim that the court here was wrong in not using the rental value theory; indeed, it condemns that theory as being vicious; but its position seems to be that the true measure is the difference in the value of the property before and after the removal of the lateral support. That measure might be correct if the damage were completed, that is, if all the sliding has taken place and the soil has come to a final rest. But that is not the situation here. The earth movement is a continuing one. There will be more sliding and consequently more damage. To fix in this suit the damage to be caused by future slides would be to deprive the city of its undoubted right to bulkhead or adopt some other means to arrest the sliding. It ought

not be deprived of this right to lessen the damage. If the city had announced in the trial of this case that it would not do anything to stop the movement of the earth, then it is probable that the respondent could, and maybe she ought to be required to, obtain all her damages in this action. Since the measure of damage used by the trial court is very nearly that stated by the appellant, but somewhat more favorable to it, we may assume that it means to contend for that rule. If the rental value is not the true measure (as appellant contends), then that used by the trial court was. Under these circumstances, it is unnecessary to discuss the rental value theory.

Judgment affirmed.

TOLMAN, C. J., PARKER, MAIN, and ASKREN, JJ., concur.