# FRED G. BREWITZ v. CITY OF ST. PAUL.

99 N. W. (2d) 456.

November 13, 1959—No. 37,687.

*Louis P. Sheahan,* Corporation Counsel, and *Robert E. O'Connell,* Special Assistant Corporation Counsel, for appellant.

*Thomas Malone,* for respondent.

NELSON, JUSTICE.

This case is brought by a property owner to recover for damage to his property caused by lowering the grade of an adjoining street. Plaintiff has occupied, improved, and maintained his property since November 1949. It is located in St. Paul and has a frontage of 297 feet on the east side of Clarence Street, which street runs in a northerly and southerly direction. Plaintiff makes the claim that as a result of street grading by the city of St. Paul his property has been damaged through interference with access respecting two driveways opening onto Clarence Street and that the grading also necessitated changes in the private sidewalk which runs to the front entrance of plaintiff's home in order to afford adequate access by foot. The city does not dispute these items of damage claimed by plaintiff nor the jury's findings on that issue. Plaintiff, however, was permitted, over objection by the city, to claim as damages loss of lateral support resulting from the grading and lowering of Clarence Street and in connection therewith to claim the need for a retaining wall to arrest continuing damage. The latter issues are before this court.

The defendant city conducted two separate and distinct procedures relating to plaintiff's property. It lowered the grade of Clarence Street where it adjoins plaintiff's property and it then took an easement by condemnation in and through plaintiff's property for the purpose of constructing a slope from the street base upward and onto plaintiff's property.

The grading, between the years 1954 and 1956, resulted in a straight cut at the westerly edge of plaintiff's property removing the lateral support which plaintiff's property enjoyed from abutting Clarence Street. Prior to 1954, plaintiff's property sloped gradually to the west from his home to the point where it adjoined the easterly edge of Clarence Street. The grading resulted in a straight cut at the property line of 4.9 feet and 3.5 feet at the center of Clarence Street. The defendant city based its figures on a survey taken by its engineers in the year 1955 which purported to show the natural level of Clarence Street prior to any excavation by the city, but the city had reduced the natural level of the ground prior to the survey while undertaking sewer and other improvements. One of plaintiff's witnesses, a Mr. Noyes from whom the plaintiff purchased his property, testified that the cut was approximately 10 feet in depth. Nevertheless the fact is established that it resulted in an unsupported sheer wall at the westerly edge of plaintiff's property. Plaintiff claims that it was at this stage that the lateral support was taken away from his property.

There is no evidence in the record that plaintiff has been compensated for this loss of lateral support. No mention is made of lateral support in the proceeding for condemnation of an easement. It is also clear that the sole object of the condemnation proceeding to acquire a slope easement extending back from the property line some 10.6 feet was to protect Clarence Street from collapsing soil entering the street excavation and to modify the cave-in and eroding effect which might in all probability become destructive to plaintiff's property. The testimony is quite convincing that the easement slopes which the city constructed did not eliminate the damages caused by the removal of the lateral support through the lowering of the street grade.

The condemnation proceeding was taken pursuant to St. Paul City

Charter, c. 14, entitled "Local Improvements and Assessments Therefore." As to general powers thereunder, see § 233, which reads in part:

"The municipal corporation of the City of St. Paul, by and through its council, is hereby vested with and authorized and empowered to exercise the following powers:

"(1)   From time to time, to acquire for present or future public use by purchase, gift, devise or condemnation any and all lands or easements therein for the following public uses and purposes:

\*   \*   \*   \*   \*

"(c)   For easements for the construction of slopes, retaining walls, for cuts and fills upon real property on any street, boulevard, parkway or other public street, thoroughfare or highway, or for any other public use or purpose.

"(2)   To change the grade, to grade, to pave, with any kind of material or pavement, to curb, to boulevard, to wall, to bridge, any street, alley, lane, parkway, boulevard or other public thoroughfare or highway; \* \* \*."

Other pertinent provisions are: Inauguration of public improvements and procedure, §§ 239 to 242; preliminary assessment for local improvements, § 244; final assessment, § 245; judicial confirmation, § 246; hearing—jurisdictional defects, § 247; inaugurations—awards in condemnations, § 269; confirmation of awards, § 270; appeals—notice pleadings—jurisdiction of court, § 271.

The defendant contends that plaintiff is foreclosed from asserting any claim for damages by reason of the aforesaid condemnation proceeding. It asserts that the proceeding was conclusive on the plaintiff regarding removal of lateral support and furthermore that since the plaintiff has taken no appeal from the condemnation proceeding he is precluded from presently raising the question.

Plaintiff takes the view that the sloping which was done by the city to stop the cave-ins, washouts, and soil erosion failed in its purpose and that as a result it has become incumbent on the city to take an easement for and to construct some type of retaining wall to alleviate the situation. Plaintiff therefore contends that the condemnation pro-

ceeding to obtain an easement for slopes did not involve the removal of lateral support nor has he been compensated therefor.

Plaintiff further contends that the situation presented is somewhat analogous to that which came before the court in McCullough v. St. Paul, M. & M. Ry. Co. 52 Minn. 12, 15, 53 N. W. 802, 803, where:

"* * * The company, in constructing its road in the usual manner, excavated to a depth of eighteen or twenty feet, on the strip so acquired by it, up to, or very nearly to, the line dividing that strip from the plaintiff's lots. It endeavored, successfully at first, to sustain the soil at the side of the excavation by driving piles; but finally, from some cause, the piles gave way, and all support on that side to the soil of plaintiff's lots being removed, a large part of the surface of the lots slid into the excavation."

This court in the McCullough case, in respect to the right to the lateral support of adjacent soil, which it termed an absolute right, said that a municipal corporation, in its title to streets (where the right to remove such support has not been acquired by condemnation), stands on the same footing as an individual owner. To justify its removal of the lateral support to the soil of an adjacent owner it must show a right to do so acquired either by purchase or condemnation. The court further said that as there was no purchase of the right in that case the only question was, did the company acquire it by the condemnation proceeding. While the trial judge in the court below directed the jury to return a verdict for the defendant, this court on appeal reversed. Also see, Dyer v. City of St. Paul, 27 Minn. 457, 8 N. W. 272; Nichols v. City of Duluth, 40 Minn. 389, 42 N. W. 84; Wallenberg v. City of Minneapolis, 111 Minn. 471, 127 N. W. 422, 856; Hirsch v. City of St. Paul, 117 Minn. 476, 136 N. W. 269.

In the case at bar the jury returned a verdict in plaintiff's favor in the total sum of $1,750, $400 thereof being on account of the grading's adversely affecting access from plaintiff's property to Clarence Street and $1,350 on account of the grading's adversely affecting lateral support of plaintiff's property.

The defendant city thereupon moved the trial court for judgment in its behalf notwithstanding the verdict or for a new trial. This being

denied, defendant city appeals. The plaintiff is entitled to the benefit of the rule that the reviewing court will view the evidence in the aspect most favorable to the jury's verdict. Likewise, where the evidence is ambiguous, and some of it appears to be in the case at bar, it must be construed in favor of the party for whom the verdict is rendered. 14 Dunnell, Dig. (3 ed.) §§ 7142, 7159.

A careful reading of the court's charge clearly indicates that the court limited and restricted the issues submitted to the jury to removal and loss of lateral support and resulting damages, if any, growing out of the regrading of Clarence Street and the excavating involved. The question of damages for loss of dirt, trees, hedge, etc., which had been encompassed within the slopes condemnation, was entirely bypassed as was any damage due to construction of the slope. Any damages which might be awarded by the jury were restricted to the lowering of the grade of the street and such other damages as stand admitted by the city. The court gave the following instructions to the jury:

"It is essential that you remove from your minds all consideration of the particular damage if any, resulting from the City's taking the easement for slopes, including the taking not only of the soil, but any shrubs or trees in the area included in the easement.

"The references which will be made to lateral support constitute the lateral support beyond the boundaries of the easement. The questions involved in taking the easement for slopes are the subject of another separate proceeding and are not before this jury. However, this does not take from you the question of whether or not the lateral support beyond the boundary of the easement has been affected by reason of the grading or the question of whether the trees now on the property have been damaged by the grading.

"* * * So the single issue here involved is the question of whether or not the property was damaged because of the lowering of the street grade below the natural ground level.

＊　＊　＊　＊　＊

"Under the law of Minnesota private property may not be taken, destroyed or damaged for public use without just compensation. Just compensation as it is used in our law means an amount equivalent

to the difference between the fair market value of the property before, and the fair market value of the property after the grading was completed unless the cost of restoring the property to its natural state is less than the difference in value in which case the cost of restoration is the measure of damages.[1]

\* \* \* \* \*

"Mr. Brewitz also claims damages for removal of the lateral support of his property along his west boundary line and beyond the line of the easement for slopes by reason of the grading. Under the law of this state a property owner has the right to have his land supported by the land of his neighbors and if the removal of such support results in damage to the property the owner is entitled to compensation. As I have said, in the consideration of this claim you will not under any circumstances make any award for removal of soil, shrubs or trees along the west line under the City's easement for slopes, since this matter was the subject of a separate proceeding. You will only decide whether the remaining property has had the lateral support removed by the grading and if so, whether damage resulted."

█ It is settled law that every person has the right to the lateral support of the land adjoining his and is entitled to damages for its removal. This rule is based on the proposition that in a state of nature all land is held together and supported by adjacent lands through operation of forces of nature. Sime v. Jensen, 213 Minn. 476, 7 N. W. (2d) 325.

We are thus confronted with the question whether the plaintiff is entitled to damages from the defendant city, upon the record herein, for removal of lateral support from his land due to lowering the street grade; whether he is barred from recovering his damages for loss of lateral support because the defendant city has condemned a portion of his property for an easement to construct a slope which has failed to accomplish its purpose of stopping owner's land from caving in; and

---

[1]See Berg v. Village of Chisholm, 143 Minn. 267, 173 N. W. 423, on measure of damages to abutting owner involving change of street grade. The court's charge in the case at bar on the measure of damages to abutting owner was in harmony with the rule laid down in the Berg case.

whether the reasonable cost of constructing a retaining wall, if rendered necessary because of the city's removal of lateral support, is a proper element for the jury's consideration in determining damages.

It is important to ascertain what the parties in fact contemplated at the time the original condemnation was instituted for obtaining the slope easement. Clearly no condemnation for lowering and grading the street is included in the proceeding. Had the city proved condemnation for removal of lateral support or compensation therefor under the original condemnation proceedings, then he would be entitled to no more. However, there were no condemnation proceedings required for the grading since the city had acquired the right to use the street and to occupy the width of the property graded to the extent of 60 feet. The condemnation ordinances as we read them do not spell out a taking in the present easement condemnation as to lateral support. It is to be observed that a common-law action such as the one commenced by the plaintiff in the instant case is one authorized by constitutional amendment, for damages resulting to adjacent property for the taking away of lateral support, not for the taking of the property itself.[2]

We think the trial court in its memorandum disposed of the issue clearly in the following words:

"The purpose of taking an easement for slopes is to minimize damage for removing the lateral support to the remainder of the property occurring from the lowering of the grade and any consequent erosion or sliding of the soil. If in fact the easement for slopes was insufficient to prevent damage for removing the lateral support in the grading operation, there is no logical reason or authority for preventing the owner from recovering damages if they are limited to those occasioned by the lowering of the grade and not those occasioned by work done pursuant to the easement. * * *

* * * * *

"* * * it is the opinion of the Court that removal of lateral support

[2]Minn. Const. art. 1, § 13, as amended, provides: "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

for which the jury awarded damages, occurred from lowering the grade and not from taking an easement for slopes under the Court's instructions. To sustain its position the City must in effect claim that the easement designed to prevent the loss of lateral support in fact aggravated the loss of lateral support. There was evidence from which the jury could find damage for loss of lateral support from lowering of the grade, and no evidence was submitted by the City to show that such damage in fact occurred from taking of the easement for slopes."

In an early Minnesota case, Nichols v. City of Duluth, 40 Minn. 389, 42 N. W. 84, Mr. Justice Mitchell speaking for the court said:

"A land-owner has a right to the lateral support of the soil in the adjoining street, and a city is liable for any damage occasioned by removing this lateral support in grading the street. Following Dyer v. City of St. Paul, 27 Minn. 457.

"It is no defence that the act was necessary for the purpose of grading. If the city desires to excavate the soil of the street which naturally renders lateral support to adjoining property, it must acquire the right to do so by the exercise of eminent domain, or else substitute other lateral support in place of the soil removed. This right of the lateral support of the adjoining soil, being a natural one, is absolute, and independent of any question of negligence."

■ Again in Schultz v. Bower, 57 Minn. 493, 496, 59 N. W. 631, Mr. Justice Mitchell, speaking for the court, although granting a new trial because of error in the court's instructions to the jury, said that the following suggestions as to the law of such cases might well be made use of in view of a second trial:

"* * * The right of lateral support from the adjacent soil is an absolute right of property; and, as a consequence of this principle, it follows that for any injury to his soil, resulting from the removal of the natural support to which it is entitled, by means of excavation on an adjoining tract, the owner has a legal remedy against the party by whom the mischief has been done. This does not depend upon negligence, but upon the violation of the right of property. [Cases cited.] This unqualified or absolute right of lateral support applies only to the land itself, and not to the buildings or other artificial structures. Where

one, by digging in his own land, causes the adjoining land of another to fall, the actionable wrong is not the excavation, but the act of allowing the other's land to fall. Sedg. Dam. § 925.

"Hence the measure of damages is the diminution of the value of the land by reason of the falling of the soil; and it is immaterial whether this falling be called 'caving' or 'washing,' provided it is the natural and proximate result of removing the lateral support."

■ In Collins v. Village of Richfield, 238 Minn. 87, 55 N. W. (2d) 628, it was pointed out that prior to the adoption in 1896 of the amendment to Minn. Const. art. 1, § 13, which inserted the words "destroyed or damaged" into the section, damages for injury to private property caused by a change of grade of a street were not recoverable against a municipality except in those cases where adjoining property was in fact invaded or the work of improvement had been negligently performed. This court then held that after the amendment had been adopted damages were recoverable by an abutting owner in an action at law for consequential damages resulting from acts of a municipality in lawfully changing an established grade or otherwise altering its streets, citing numerous cases, among them Wallenberg v. City of Minneapolis, *supra*. It was concluded that there could be no question, therefore, that an action for damages for consequential injuries from change of grade existed.

■ We think there is merit in plaintiff's contention that the lateral support was removed from his property when the defendant city reduced the grade and was at no time taken in the slope easement proceeding. Plaintiff's testimony is clear and unequivocal that after the slope had been constructed and even though it had been constructed, his land continued to wash, erode, or fall away leaving gullies along the sloping bank. Defendant appears to rely on Hirsch v. City of St. Paul, 117 Minn. 476, 136 N. W. 269, as controlling in this litigation by distinguishing the facts. Using the Hirsch case and attempting to distinguish the facts does not alter the present situation. Plaintiff contends that he has no quarrel with the Hirsch case which was cited in support of defendant's position and is willing to concede that it is controlling in so far as the facts in the Hirsch case are in harmony with

the facts in the instant case. While the condemnation provisions of the city's charter, § 269, et seq., provided a remedy whereby the property owner may be compensated, the fact is that in the instant case the city has not proceeded under the condemnation provisions in the grading proceeding. The plaintiff could not decide for the city what it was necessary for the city to take. The plaintiff was in no position to compel the city to proceed under condemnation provisions of the charter as to lateral support.

In Collins v. Village of Richfield, *supra,* it was held that where a municipality caused a change of grade to be made without instituting an action for condemnation of the abutting property the owner of such property was not entitled to a writ of mandamus compelling the municipality to institute condemnation proceedings to fix the amount of damages suffered since he had a plain, speedy, and adequate remedy at law. We think the plaintiff herein has pursued what is properly and clearly available to him, a speedy and adequate remedy at law involving the destruction of a natural and absolute right, namely, the right of lateral support of the adjoining soil to the land which he owns. His right in that respect is reinforced by the fact that there were two separate proceedings and that in neither was reference made to include lateral support under the ordinance provisions.

Section 269 of the city's charter requires that in all condemnation proceedings the commissioner of public works shall prepare and deliver to the council a sketch, plan, or profile showing all property to be taken or condemned. In Matter of Culver Contracting Corp. v. Humphrey, 268 N. Y. 26, 35, 196 N. E. 627, 629, that court in a similar situation pointed out that:

"In the case at bar * * * maps, plans and memoranda were prepared and annexed to the petition for condemnation. The property which suffered the physical damage, however, as distinguished from property rights acquired, is not mapped or described, nor is there any provision for the condemnation of easements of lateral support. On the contrary, the petitioner expressly excepts such easements. The city has the right to determine what property it wishes to condemn. It has decided to condemn the fee of the street and certain temporary and

permanent easements. It has failed to condemn the property herein involved or the easement of lateral support appurtenant to it."

Had plaintiff claimed herein that he was entitled to damages for dirt, trees, and hedge taken in the slope condemnation, the city's claim of res judicata might concededly have merit, but we think not when it is sought to apply it to plaintiff's claim for his loss of lateral support.

■ The trial court has cited Casassa v. City of Seattle, 66 Wash. 146, 119 P. 13, as supporting authority for plaintiff's claim that he is entitled to recover for loss of lateral support. The city takes the position that the Casassa case differs entirely from the case at bar since in that case the city of Seattle went beyond the area covered in its condemnation plan. The plaintiff contends that the slopes which the city constructed did not eliminate the damages caused by the taking of lateral support contending that the city, rather than constructing the slope to prevent the washing away of plaintiff's soil, should have taken an easement for the construction of a retaining wall as provided by § 233(1) (c) of defendant's charter on the theory that in all probability the construction of a retaining wall would have restored the lateral support which had been taken. Apparently the jury found this to be a fact based upon the testimony of plaintiff and one of his witnesses, a masonry contractor. See Kopp v. N. P. R. Co. 41 Minn. 310, 43 N. W. 73, wherein this court held that evidence of the cost of a retaining wall was proper to show whether or not the damage could have been repaired, and the lot preserved, at any reasonable cost.

■ The Casassa case involved an action brought to recover damages caused by the regrading of streets in the city of Seattle. Plaintiff's abutting property had been improved prior to the regrading by erecting two frame buildings thereon. The lots were level with the streets. The city by ordinance determined to regrade which involved making a cut in front of the lots of from 55 to 58 feet in depth, the city's plan being to make a one-to-one slope from the street onto the lots, by which means it planned to cut down the front part of the lots at an angle of 45 degrees. The ordinance provided for the ascertainment and payment of compensation for property taken or damaged in the change of grade. The city awarded the owner $1,000, which was paid.

Thereupon the city's contractor proceeded as required under its contract to make the cut and slope. While excavation was in progress the soil of plaintiff's lots, by its own weight, slid beyond the slope into the excavation in the streets, causing destruction of the houses on the property and leaving plaintiff's lots in an irregular and uneven condition. Plainly, what developed was that the 45-degree slope did not protect the streets or provide lateral support for the remainder of the lot. The Supreme Court of Washington proceeded on the theory that parties and their privies are only concluded by the judgment in a condemnation proceeding as to all matters which were or could be put in issue in that proceeding. The trial court had ruled, after plaintiff's evidence had been introduced, that the defendant city and contractor were not liable, discharging the jury and dismissing the action. The supreme court held on appeal that since the city's determination to take only sufficient land to make a slope of 45 degrees was conclusive on the owner the damages fixed by the award were for the part so taken, and no more, and for injury to the remainder on account of the part actually taken; hence the judgment awarding damages was not res judicata of plaintiff's right to recover such additional damages sustained by reason of the further caving of their property and the destruction of their buildings. The judgment of the court below was reversed as to the city and the cause remanded for a new trial. In that case the city had proceeded by action in condemnation against the owners to acquire the right to make the grade and slope as hereinabove stated. It is clear from the opinion that the court on appeal proceeded on the theory that it would be unreasonable to hold that the city, having taken a parcel of land definitely located, might take as much more as subsequently proved necessary, even to the destruction of the buildings upon the land outside of the part taken, without being liable for additional damages.

We think the later case of Davis v. City of Seattle, 134 Wash. 1, 235 P. 4, 44 A. L. R. 1490, which makes reference to the Casassa case, is helpful in considering the issues in the case at bar. The Washington Supreme Court said in that case (134 Wash. 3, 235 P. 4):

"* * * This action is based on the ground that the appellant had

removed the lateral support of respondent's lots. That question was not involved in the condemnation suit. There the city undertook to acquire nothing more than the right to lower the grades of the streets and make a one-to-one slope on respondent's property. It did not undertake to obtain the right to remove the lateral support of respondent's property, nor was she compensated for any damage because thereof. It is conceded that, at the time of the bringing of the condemnation suit, and at the time the regrade work was actually done, no person knew that there would be any slides as a result thereof, nor, indeed, did any person at that time anticipate such slides. It is doubtless true that the city there might have acquired the right to remove the lateral support, but it did not. We deem it unnecessary to discuss this question further, because we have had it before us previously and the matter has been fully reviewed. [Cases cited.]

"The appellant makes an elaborate argument forcefully but courteously criticizing a number of our decisions on these regrade cases where we have said that the property owners' rights were protected and controlled by our constitutional provision that '* * * no private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, * * *.' Article 1, § 16. Its argument appears to be that the constitutional provision has nothing to do with this kind of action, but that it is controlled entirely by the common law on the subject. An engaging argument has been made, but we refuse to be here drawn into the intricacies of the subject, because we are wholly unable to see that the rights of the parties to this particular case would be any different under the common law rules than under the doctrine of our cases holding that the rights of the parties are controlled by the above constitutional provision."

■ As we view the record, different persons might reasonably draw different conclusions from the evidence. If this be true the verdict should not be disturbed since a new trial should be granted only in case of manifest injustice. It should not be granted upon conflicting evidence unless the verdict is so manifestly contrary to the preponderance of the evidence as to warrant the inference that the jury failed to

consider all the evidence or acted under some mistake or from some improper motive, bias, feeling, or caprice, instead of dispassionately and honestly exercising their judgment upon all the evidence. 14 Dunnell, Dig. (3 ed.) § 7142, and cases cited.

The verdict has been approved by the trial judge who heard the witnesses and the evidence and had an opportunity to consider the condition of plaintiff's property during the progress of the trial. We see no basis after a full consideration of the record for concluding either that the court abused its discretion or committed prejudicial error throughout the trial. The order of the trial court denying defendant's motion for judgment notwithstanding the verdict or for a new trial must be affirmed.

Affirmed.